## S02A0230. CHAPMAN v. THE STATE.
### (565 SE2d 442)

BENHAM, Justice.

In April 1989, Warren Jones was shot and killed by one of four armed men who confronted him and his companion and stole his automobile. Jones's companion, Jeffrey O'Neal, was accosted by two of the four perpetrators and $60 was taken from him. In November 1995, a jury returned guilty verdicts against appellant James Chapman for malice murder, felony murder (aggravated assault and armed robbery being the underlying felonies) in connection with the death of Jones, two counts of armed robbery, and aggravated assault of O'Neal. The trial court sentenced appellant to life imprisonment for malice murder, imposed a consecutive 20-year term of imprisonment for the armed robbery of O'Neal, and determined that the remaining convictions merged. While appellant's motion for new trial was pending, the trial court vacated the malice murder conviction and sentence and sentenced appellant to life imprisonment for felony murder. The trial court subsequently denied appellant's motion for new trial, and appellant filed this appeal.[1]

1. The surviving victim testified he and the murder victim were standing on opposite sides of the car they had just parked and exited after midnight near a Harwell Road nightclub in northwest Atlanta when four armed men surprised them. One man pointed a gun at the witness's head while another poked him in the side with a sharp metal object and took $60 from him. The witness heard his friend

---

[1] The crimes occurred on April 14, 1989. Appellant was arrested in November 1994 after he told an Alabama police chief of his involvement in the crimes. The Fulton County grand jury returned a true bill of indictment on February 14, 1995, and appellant's trial commenced on November 6, 1995. It concluded on November 9 when the jury returned its guilty verdicts. Appellant was initially sentenced on November 13, 1995. He filed a motion for new trial on November 20, 1995, and amended it on June 20, 2001. On August 23, 2001, the trial court vacated the sentence on the malice murder conviction and replaced it with a sentence of life imprisonment for the felony murder conviction. The trial court denied appellant's amended motion for new trial on September 12, 2001, and appellant filed a timely notice of appeal on September 24. The case was docketed in this Court on October 30, 2001, and submitted for decision on the briefs.

being beaten by the other perpetrators as they demanded the murder victim's car keys, but the surviving victim was not permitted to look at the other side of the car. The victim/witness testified he was led to some bushes and forced to lie down in the bushes while the four men left, and he arose to find his bloodied friend lying in the street. The deputy chief medical examiner who performed the autopsy testified the victim died from a gunshot wound to his left side and had suffered multiple blunt force trauma to his head that indicated he was below his attackers. A small caliber (.22-.25) bullet was recovered from the victim's body.

In addition to the survivor's testimony, the State presented as evidence appellant's testimony at his preliminary hearing and two statements given by appellant, one to the Alabama police chief to whom he turned himself in over five years after the crimes were committed, and one to the Atlanta detective assigned to the case. In the statements, appellant admitted being with three other men who decided to rob two men who were exiting a car on Harwell Road. According to appellant's statements, the other three men, two armed with guns and one with a screwdriver, approached the victims while appellant stayed in the perpetrators' car. When appellant heard the murder victim struggling with one of the assailants, appellant, carrying a .22-caliber rifle, exited the car. After telling one of his colleagues to put the other victim in the bushes, appellant approached the murder victim who, while on his back on the ground, had grabbed the barrel of his assailant's gun. Appellant pointed his rifle at the murder victim and told him to let go of the gun. The victim then grabbed appellant's gun and pulled it, causing appellant to pull the trigger and the gun to fire, fatally wounding the victim. The perpetrators left the victim lying in the street and two of the men drove off in the victim's car while the other two left in the car in which the foursome arrived. The evidence was sufficient to authorize appellant's convictions for the felony murder/aggravated assault of victim Jones and the armed robbery of victim O'Neal. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant contends his convictions cannot stand because they are based on his uncorroborated confessions. "A confession alone, uncorroborated by any other evidence, shall not justify a conviction." OCGA § 24-3-53. " '[C]orroboration of a confession in any particular satisfies the requirements of the statute. (Cit.)' [Cit.]" *Miller v. State*, 268 Ga. 1, 2 (485 SE2d 752) (1997). "Proof of the corpus delicti is sufficient corroboration and, in a murder case, the corpus delicti is established by proof that the victim is dead, that the death was caused by violence or the direct criminal agency of another human being, and that the accused caused the death in the manner charged. [Cit.]" *Blackwell v. State*, 270 Ga. 509 (2) (512 SE2d 233) (1999).

Appellant's confessions were sufficiently corroborated by evidence the victim was killed by a small-caliber weapon while lying on the street appellant identified as the site of the crimes, and by the details set forth in the testimony of the surviving victim, summarized in Division 1. See id.; *Carswell v. State*, 268 Ga. 531 (1) (491 SE2d 343) (1997); *Sands v. State*, 262 Ga. 367 (1) (418 SE2d 55) (1992).

3. The trial court vacated appellant's malice murder conviction and sentence, re-instated his felony murder conviction, and sentenced him thereon after appellant pointed out in his amended motion for new trial that the trial court had given an erroneous jury instruction when it told the jury it could infer intent to kill from appellant's use of a deadly weapon and that it was within the jury's discretion whether to make the inference. In *Harris v. State*, 273 Ga. 608 (2) (543 SE2d 716) (2001), this Court held that "the giving of a 'use of a deadly weapon' charge is error, whether or not it is accompanied by an instruction that the jury has the discretion to make the inference."[2] However, the giving of the "use of a deadly weapon" charge is harmless error when the defendant stands convicted of felony murder rather than malice murder. *Dolensek v. State*, 274 Ga. 678 (558 SE2d 713) (2002); *Oliver v. State*, 274 Ga. 539 (2) (554 SE2d 474) (2001). Appellant asserts that the giving of the charge is not harmless error in a felony murder case when, as here, the underlying felony is the aggravated assault with a deadly weapon that resulted in the death of the victim. See OCGA § 16-5-21 (a) (2).[3] However, the jury instruction at issue authorizes the jury to infer intent to kill or malice from the use of a deadly weapon, and neither felony murder nor aggravated assault is a crime that requires proof of malice or intent to kill. Felony murder requires "only that the defendant possessed the requisite criminal intent to commit the underlying felony. [Cit.]" *Franklin v. State*, 268 Ga. 865 (1) (494 SE2d 327) (1998). Intent to kill is not an element of aggravated assault with a deadly weapon. *Emmons v. State*, 142 Ga. App. 553 (1) (b) (236 SE2d 536) (1977). Compare *Wright v. State*, 168 Ga. 690 (1) (148 SE 731) (1929), where the Court noted that aggravated assault with intent to commit murder (OCGA § 16-5-21 (a) (1)) does require a specific intent to kill. Since appellant stands convicted and sentenced, not for malice murder but for felony murder/aggravated assault with a deadly weapon, the trial court's charge authorizing the jury, if it so chose, to infer

---

[2] Appellant's trial took place approximately five and one-half years before the *Harris* decision in March 2001, but the *Harris* holding is expressly applicable to those cases pending on direct review or not yet final (*Harris v. State*, supra, 273 Ga. at 610), and the appeal at bar is such a case.

[3] The aggravated assault that supported the felony murder convictions in both *Dolensek* and *Oliver* was the shooting of the victim that resulted in the death of the victim. See *Dolensek*, supra, fn. 1; *Oliver*, supra, fn. 1.

intent to kill from appellant's use of a deadly weapon, constituted harmless error. *Dolensek*, supra; *Oliver*, supra.

4. Appellant contends the State failed to prove beyond a reasonable doubt that the crimes were committed in Fulton County.[4] Generally, a criminal action must be tried in the county in which the crime was committed (Ga. Const. 1983, Art. VI, Sec. II, Par. VI; OCGA § 17-2-2 (a)), and the State may establish venue by whatever means of proof are available to it, including direct and circumstantial evidence. *Jones v. State*, 272 Ga. 900 (3) (537 SE2d 80) (2000). As an appellate court, we view the evidence in a light most favorable to support the verdict and determine whether the evidence was sufficient to permit a rational trier of fact to find beyond a reasonable doubt that the crime was committed in the county where the defendant was indicted. *Starling v. State*, 242 Ga. App. 685 (530 SE2d 757) (2000); *Casey v. State*, 231 Ga. App. 701, 702 (500 SE2d 613) (1998).

In the case at bar, the surviving victim and the City of Atlanta investigating police officer and detective testified the crime occurred at 1097 Harwell Road about 50 feet down the road from the Blue Flame Lounge, located at 1100 Harwell Road in Fulton County. There was no direct evidence that 1097 Harwell Road, where the victim's body was found and where the crimes occurred, was located in Fulton County. Rather, the direct evidence established only that the lounge, a site near the murder scene, was located in Fulton County. Establishing the venue of a near-by site does not establish the venue of the murder site itself. *Jones v. State*, supra, 272 Ga. at 903-904. See also *Robinson v. State*, 275 Ga. 142 (561 SE2d 822) (2002) (officer's testimony that he discovered the victim's body on a street located in Fulton County was sufficient evidence to establish beyond a reasonable doubt that venue of the murder prosecution was in Fulton County). However, there was in the case at bar circumstantial evidence from which the jury could conclude beyond a reasonable doubt that venue was in Fulton County: the testimony of the police officer who responded to the call for emergency help, coupled with the testimony of the deputy chief medical examiner of Fulton County. First, the police officer who responded to the call for help at the crime scene testified he was employed on the date of the crime as a "City of Atlanta police officer, Fulton County, Georgia." In light of the well-settled principle that public officials are believed to have performed their duties properly and not to have exceeded their authority unless clearly proven otherwise (see *Richmond County Hosp. Auth. v. Richmond County*, 255 Ga. 183 (2) (c) (336 SE2d 562) (1985); *Fine v. Dade*

---

[4] Proving venue is a simple exercise that generally requires the asking of one question. In light of the ease with which venue can be proved, it is difficult to understand why the appellate courts are repeatedly faced with this issue.

*County*, 198 Ga. 655, 663 (32 SE2d 246) (1944)), the jury was authorized to find the police officer acted within the territorial jurisdiction in which he testified he was employed, the Fulton County part of the City of Atlanta. See, e.g., *Frisbey v. State*, 236 Ga. App. 883 (2) (514 SE2d 453) (1998), overruled on other grounds in *Jones*; *Joiner v. State*, 231 Ga. App. 61 (497 SE2d 642) (1998), overruled on other grounds in *Jones*. Compare *Jones v. State*, supra, 272 Ga. 900 (3) (since the police officers who responded to the shooting patrolled both Fulton and DeKalb counties, the fact that City of Atlanta officers investigated the shooting did not establish that venue was proper in Fulton County); *Bradley v. State*, 238 Ga. App. 490 (519 SE2d 261) (1999) (since the arresting officer was a state trooper and not a county law enforcement officer, no inference could be made that arresting officer was acting within the territorial jurisdiction of a particular county).

In addition to being authorized to find from the police officer's testimony that he acted within his authority to investigate a crime that took place in Fulton County, the jury was also authorized to find from the testimony of the deputy chief medical examiner of Fulton County that the crime occurred in Fulton County. That witness testified that the victim's body came to the Fulton County Medical Examiner's offices because a deceased person in Fulton County whose death is not the result of natural causes is a case for the medical examiner. His testimony reflects the state of the law — the Fulton County Medical Examiner is a public official whose duties include the performance of autopsies on the bodies of deceased victims of violence occurring within Fulton County, the territorial jurisdiction of the Fulton County Medical Examiner. Ga. L. 1965, p. 2497; OCGA § 45-16-24 (a) (1). See also OCGA § 45-16-21 (1.1), (2), (8), (9), and (13), where "county medical examiner" is distinguished from "local," "state," and "regional" medical examiners. This "inference by narration," dependent upon the credibility of the witness giving the testimony, the coherence of that testimony, the relevance of that testimony, and whether the witness is acting in character, is sufficient evidence from which the jury could conclude beyond a reasonable doubt that the crimes were committed in Fulton County, making venue in Fulton County proper.

5. Appellant sees reversible error in the trial court's refusal to give jury instructions on voluntary manslaughter, involuntary manslaughter, and reckless conduct.

(a) Appellant maintains that a charge on voluntary manslaughter was supported by his statements admitted into evidence that the rifle he pointed at the victim fired when the victim grabbed the barrel of the gun.

Voluntary manslaughter occurs when one kills another human being under circumstances which would otherwise be murder, if the killer "acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person. . . ." OCGA § 16-5-2 (a). Whether there is evidence to support a finding that the defendant acted "solely as the result of a sudden, violent, and irresistible passion resulting from a serious provocation" is a question of law. [Cit.]

*Mack v. State*, 272 Ga. 415 (2) (529 SE2d 132) (2000). Appellant asserts the jury could rationally conclude from this evidence that he fatally shot the victim solely as the result of a sudden, violent and irresistible passion brought on by the victim grabbing appellant's weapon when appellant pointed it at him. "A voluntary manslaughter charge is not warranted when the only evidence of provocation is the victim resisting an armed robbery." *Nance v. State*, 272 Ga. 217 (3) (526 SE2d 560) (2000). The trial court did not err when it declined to instruct the jury on the law of voluntary manslaughter.

(b) Appellant contends the evidence supported the giving of jury instructions on involuntary manslaughter and reckless conduct. However, when the victim is killed during an armed robbery, there is no involuntary manslaughter/unlawful act (reckless conduct). See *Rouse v. State*, 265 Ga. 32 (2) (453 SE2d 30) (1995). The trial court did not err when it declined to give a charge based on OCGA § 16-5-3 (a).

*Judgment affirmed. All the Justices concur, except Fletcher, C. J., and Hines, J., who concur in judgment only as to Division 4, and Sears, P. J., who dissents.*

DECIDED JUNE 10, 2002 —
RECONSIDERATION DENIED JULY 12, 2002.

*Zell & Zell, Rodney S. Zell,* for appellant.
*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Marc A. Mallon, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Madonna M. Heinemeyer, Assistant Attorney General,* for appellee.