**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS, P. J. and BOGGS, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**February 4, 2013**

# In the Court of Appeals of Georgia

A12A2342. PERKINS v. STATE.                                    DO-089 C

DOYLE, Presiding Judge.

Following a jury trial, Adrian Perkins was convicted of seven counts of armed robbery. He appeals the denial of his motion for new trial, arguing (1) that the trial court erred by impermissibly commenting on the evidence in violation of OCGA § 17-8-57 and (2) that the State failed to prove venue as to two of the counts of armed robbery. We affirm, for the reasons that follow.

Construed in favor of the verdict,[1] the record shows that the State charged Perkins with eight counts of armed robbery and one count of aggravated assault against eight individuals in six separate incidents, alleging that Perkins used a

---

[1] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

handgun in each incident. The trial court dead-docketed the aggravated assault charge and one count of armed robbery, which counts related to a single victim.

At trial, the State introduced evidence that Perkins approached each victim with a handgun and demanded their property including, in some instances, their vehicles. One victim was unable to identify Perkins, but another victim involved in the same incident identified him in a photographic lineup. The other five victims identified Perkins in photographic lineups and at trial as their assailant. Perkins's fingerprints were found on three of the stolen vehicles, and a witness testified that Perkins told her that "he robbed people all the time." The State also introduced similar transaction evidence in which the victim identified Perkins as the individual who robbed him at gunpoint.

The jury found Perkins guilty on all seven counts of armed robbery. The trial court denied Perkins's subsequent motion for new trial, and this appeal followed.

1. Perkins argues that the trial court impermissibly commented on the evidence in violation of OCGA § 17-8-57. This argument presents no basis for reversal.

During the trial, the trial court advised counsel and the defendant, outside the presence of the jury, as follows:

[O]ne of the jurors has reported to the bailiff that one of the people in this courtroom, she thinks it was a family member, gestured to her and tried to get her to come over and talk to him. It was an intimidating factor on their part. I'm not sure exactly who it was. I'm going to bring the juror in, and I'm going to ask if that person is present in the courtroom, and then I'll have to decide what to do.

The juror explained that as she was leaving a restaurant during the lunch break, a man signaled for her to go over and talk to him; she showed the man her juror badge and walked away. The juror described the man and was then directed to return to the jury room. The court then had Perkins's family members escorted into the courtroom and advised them that it had "reason to believe that the person who may have been gesturing to the juror was a family member" and warned them that anyone who contacted any members of the jury, court staff, or the parties would be cited for contempt and jailed. Then, after all of the jurors returned to the courtroom, the trial court asked the juror who reported the incident whether "the person who gestured towards [her was] in the courtroom at this time," and she responded in the negative.

Later, before court recessed for the day, the trial court explained: "[B]ecause of the earlier incident, I'm going to ask the bailiff to escort the jurors to the parking deck. And I will direct that any family members of Mr. Perkins remain in the

3

courtroom until after the jurors have departed the parking deck. That will be the order of the court. . . ." The following day, before releasing the jurors for lunch, the trial court explained to them: "[W]hen you go to lunch you will have deputies with you. We had an incident yesterday where someone attempted to talk to one of the jurors. That's impermissible, so security will be with you. . . ."

During the jury instructions, the trial court instructed the jurors that "by no ruling or comment . . . has the court intended to express any opinion about the facts of this case, upon the credibility of the witnesses, upon the evidence, or upon the guilt or innocence of the defendant."

On appeal, Perkins argues that he was denied his right to a fair trial as a result of the trial court's comments, which Perkins alleges violated OCGA § 17-8-57. Although Perkins failed to object to the trial court's comments, "we will nevertheless analyze this argument under the plain error rule."[2] OCGA § 17-8-57 provides:

---

[2] *Wright v. State*, 294 Ga. App. 20, 21 (3) (668 SE2d 505) (2008). See also *Linson v. State*, 287 Ga. 881, 883 (2) (700 SE2d 394) (2010) ("[A] violation of OCGA § 17-8-57 will always constitute 'plain error,' meaning that the failure to object at trial will not waive the issue on appeal. On appeal, the issue is simply whether there was such a violation. If so, it is well established that the statutory language is mandatory and that a violation of OCGA § 17-8-57 requires a new trial.") (punctuation omitted).

It is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused. Should any judge violate this Code section, the violation shall be held by the Supreme Court or Court of Appeals to be error and the decision in the case reversed, and a new trial granted in the court below with such directions as the Supreme Court or Court of Appeals may lawfully give.

"'To violate this statute, the comments must focus on a disputed issue of fact.'"[3]

Here, in the presence of the jury, the trial court asked the juror whether the man who attempted to contact her at lunch was in the courtroom, directed the bailiff to accompany the jurors to the parking deck, and directed Perkins's family members to remain in the courtroom until after the jurors left the parking lot. These comments did not "express or intimate" the trial court's opinion regarding the evidence or Perkins's guilt. Thus, Perkins's argument that his conviction should be reversed because the trial court violated OCGA § 17-8-57 is without merit.[4]

---

[3] *Bush v. State*, 317 Ga. App. 439, 441 (2) (731 SE2d 121) (2012).

[4] See *Linson*, 287 Ga. at 883 (2); *Wright*, 294 Ga. App. at 21 (3) (trial court's admonition to defense counsel to control his clients, who "think this is a comedy," did not violate OCGA § 17-8-57 because it "was not directed toward a material issue nor was it an intimation on [the defendant's] guilt or innocence.").

2. Perkins contends that the State failed to prove venue for two of the armed robbery counts.

> Generally, a criminal action must be tried in the county in which the crime was committed, and the State may establish venue by whatever means of proof are available to it, including direct and circumstantial evidence. As an appellate court, we view the evidence in a light most favorable to support the verdict and determine whether the evidence was sufficient to permit a rational trier of fact to find beyond a reasonable doubt that the crime was committed in the county where the defendant was indicted.[5]

Here, one of the victims testified that he went to a night club in DeKalb County and parked "close to" the club, "maybe a five minutes' walk." He and his companion were robbed when they returned to the car. There was no direct evidence that the scene of the robbery was located in DeKalb County. Instead, the direct evidence established only that the nightclub, located a five-minute walk away from the scene of the robbery, was in DeKalb County. "Establishing the venue of a near-by site does not establish the venue of the murder site itself."[6] There was, however,

---

[5] (Citations omitted.) *Chapman v. State*, 275 Ga. 314, 317 (4) (565 SE2d 442) (2002), citing Ga. Const. 1983, Art. VI, Sec. II, Para. VI; OCGA § 17-2-2 (a).

[6] *Chapman*, 275 Ga. at 317 (4), citing *Jones v. State*, 272 Ga. 900, 903-904 (3) (537 SE2d 80) (2000).

"circumstantial evidence from which the jury could conclude beyond a reasonable doubt that venue was in [DeKalb] County."[7] The police detective who compiled the photographic lineup that the victim eventually viewed testified that he was a DeKalb County police detective, and the photographic lineup admonition form that the victim signed was labeled "DeKalb Police." "In light of the well-settled principle that public officials are believed to have performed their duties properly and not to have exceeded their authority unless clearly proven otherwise, the jury was authorized to find the police officer acted within the territorial jurisdiction in which he testified he was employed, DeKalb County."[8] Accordingly, this enumeration is without merit.

*Judgment affirmed. Andrews, P. J. and Boggs, J., concur.*

---

[7] *Chapman*, 275 Ga. at 317 (4).

[8] (Citations omitted.) Id. at 318 (4). But see *King v. State*, 271 Ga. App. 384, 387 (1) (609 SE2d 725) (2005) ("the investigating officers' county of employment does not, in and of itself, constitute sufficient proof of venue to meet the beyond a reasonable doubt standard").