**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**February 4, 2015**

# In the Court of Appeals of Georgia

A14A1779. HOGAN v. THE STATE

DILLARD, Judge.

Following a jury trial, Dexter Hogan was convicted of armed robbery and possession of a firearm during the commission of a crime. Hogan appeals his convictions and the denial of his motion for a new trial, arguing that (1) the evidence was insufficient to support his convictions; (2) he received ineffective assistance of counsel; (3) the trial court erred by failing to, *sua sponte*, conduct a *Jackson-Denno* hearing; and (4) the trial court erred by not declaring a mistrial when the State failed to prove venue beyond a reasonable doubt. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record reflects that on August 26, 2010, Terry Hightower was visiting his elderly mother at her residence

---

[1] *See, e.g.*, *Powell v. State*, 310 Ga. App. 144, 144 (712 SE2d 139) (2011).

on Vineville Avenue in Macon, Georgia. That evening, after eating his mother's last (and highly prized) honey bun, Hightower walked to a nearby convenience store to replace it. Once he arrived at the store, he went inside and, while waiting to checkout, two men in the back of the store caught his attention because they did not appear to be buying anything. Hightower made his purchase and left, but on his walk home, he encountered the men from the store. When they approached, the shorter of the two asked Hightower if he wanted to buy a DVD, and Hightower responded that he did not have any money to do so. After this exchange, Hightower continued walking to his mother's house, but when he reached Vineville Avenue, he heard the same two men yelling at him. Hightower turned around and immediately noticed that the shorter man was pointing a gun at his groin, and then the taller man took the gun and pointed it at his face. While Hightower was being held at gunpoint, the shorter man frisked him and took everything in his possession, which included one dollar, his wallet, and his cell phone.

After the men left, Hightower walked back to the store and called the police. During the investigation that followed, Hightower viewed a picture of the two men that was taken with the convenience store's security cameras, and he was "one hundred percent sure" that the men in the photo were the ones who robbed him. The

detective who responded to the scene testified that, after publicizing the video footage from the store's security cameras, he identified the men as Hogan and Charles Ottman and arrested them a few days later. The detective also corroborated Hightower's testimony that there was a height disparity between the men by testifying that Hogan was several inches shorter than Ottman.

Subsequently, Hogan was charged with armed robbery and possession of a firearm during the commission of a crime.[2] After a jury trial, Hogan was convicted of both counts. Hogan filed a motion for a new trial, which the trial court denied. This appeal follows.

1. Hogan argues that the evidence was insufficient to support his convictions. We disagree.

To begin with, we note that when a criminal conviction is appealed, "the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence."[3] And, of course, in evaluating the

---

[2] Hogan was also charged with possession of a firearm by a convicted felon, but that charge was nolle prossed prior to trial. Further, Ottman was charged in the same indictment with the same offenses, but it is unclear from the record how those charges were resolved.

[3] *Sowell v. State*, 327 Ga. App. 532, 534 (759 SE2d 602) (2014).

sufficiency of the evidence, we do not "weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[4] Thus, we will uphold a jury's verdict so long as there is "some competent evidence, even though contradicted, to support each fact necessary to make out the State's case."[5] Bearing these guiding principles in mind, we turn now to Hogan's specific offenses.

(a) *Armed Robbery.* Under OCGA § 16-8-41 (a), "[a] person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon."

In the case *sub judice*, the evidence shows that Hogan and Ottman followed Hightower on his way home from the convenience store and robbed him at gun point of his cash, wallet, and cell phone. And as to Hogan's role in the robbery, the evidence shows that he pointed a gun at Hightower's groin and then took all of his

---

[4] *Lee v. State*, 317 Ga. App. 507, 508 (731 SE2d 768) (2012) (punctuation omitted).

[5] *Sowell*, 327 Ga. App. at 534 (punctuation omitted).

possessions while Ottman pointed the gun at Hightower's face. Nevertheless, Hogan maintains—without further explanation—that the evidence was "vague and ambiguous at best" as to whether he was identified from the convenience-store footage or from the crime scene. This argument is a nonstarter. Hightower plainly testified that he was *one hundred percent sure* that Hogan was one of the robbers. Given the foregoing, the evidence was sufficient to convict Hogan of armed robbery.[6]

(b) *Possession of a Firearm During the Commission of a Crime.* Under OCGA § 16-11-106 (b) (1), "[a]ny person who shall have on or within arm's reach of his or her person a firearm . . . during the commission of, or the attempt to commit any crime against or involving the person of another" commits the offense of possession of a firearm during the commission of a crime. And given our holding in Division 1 (a) *supra* (*i.e.,* that the evidence was sufficient to show that Hogan used a firearm to

---

[6] *See Rutledge v. State*, 276 Ga. App. 580, 583 (623 SE2d 762) (2005) (finding the evidence sufficient to support a conviction for armed robbery when there was circumstantial evidence that the defendant displayed a plastic gun as he demanded money); *Kirk v. State*, 271 Ga. App. 640, 643-44 (1) (a) (610 SE2d 604) (2005) (finding that sufficient evidence supported a conviction for armed robbery when evidence showed that defendant stole a coin bag while brandishing a gun); *Jackson v. State*, 248 Ga. App. 7, 8-9 (1) (545 SE2d 148) (2001) (finding that evidence was sufficient to sustain a conviction for armed robbery when evidence showed that defendant used a knife to accomplish a robbery).

commit armed robbery), we likewise find that the evidence was sufficient to show

that Hogan possessed a gun while committing the crime of robbery.[7]

2. Next, Hogan argues that his trial counsel was ineffective for failing to object

to the admission of his custodial statement to a police officer. Again, we disagree.

At the outset, we note that in evaluating claims of ineffective assistance of

counsel, we apply the two-pronged test established in *Strickland v. Washington*.[8]

Under this test, the appellant first must show that counsel's performance was deficient

and, second, that he was prejudiced by counsel's deficient performance.[9] Moreover,

there is a "strong presumption that trial counsel's performance falls within the wide

range of reasonable professional assistance, and that any challenged action by trial

---

[7] *See* OCGA § 16-8-40 (a) (2) ("A person commits the offense of robbery when, with intent to commit theft, he takes property of another . . . from the person or the immediate presence of another [b]y intimidation, by the use of threat or coercion, or by placing such person in fear of immediate serious bodily injury to himself or to another . . . ."); *Gibbs v. State*, 295 Ga. 92, 95 (1) (757 SE2d 842) (2014) (finding that, because evidence was sufficient to support a conviction for armed robbery, there was also sufficient evidence to support a conviction for possession of a firearm during the commission of a crime).

[8] 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984); *see also Ashmid v. State*, 316 Ga. App. 550, 556 (3) (730 SE2d 37) (2012).

[9] *Ashmid*, 316 Ga. App. at 556 (3); *Strickland*, 466 U.S. at 687 (III).

counsel might be considered sound trial strategy."[10] In applying the second prong, the question is whether "there exists a reasonable probability that, but for his counsel's errors, the jury would have had reasonable doubt regarding appellant's guilt, that is, but for counsel's unprofessional errors, the result of the proceeding would have been different."[11]

When the voluntariness of a confession is questioned on the trial of a criminal case it is "necessary under the decision in *Jackson v. Denno*[[12]] . . . to have a separate hearing as to the voluntariness before it is finally presented to the jury for consideration as to its voluntariness."[13] Here, in his statement to police, Hogan admitted to being in the convenience store with Ottman on the night of the robbery, but he repeatedly denied any involvement in the crime, claiming that he left the area before the robbery happened. And when asked why Ottman would have implicated

---

[10] *Ashmid*, 316 Ga. App. at 556 (3) (punctuation omitted); *Strickland*, 466 U.S. at 689 (III) (A).

[11] *Ashmid*, 316 Ga. App. at 556 (3) (punctuation omitted); *Strickland*, 466 U.S. at 694 (III) (B).

[12] 378 U.S. 368 (84 SCt 1774, 12 LEd2d 908) (1964).

[13] *Elder v. State*, 162 Ga. App. 425, 425 (291 SE2d 565) (1982) (punctuation omitted).

him in the robbery, Hogan told police that Ottman was lying because Hogan was sleeping with Ottman's wife. Hogan also denied owning a gun, but claimed that he saw Ottman with one.

Before the admission of this statement at trial, the trial court asked the parties if it should conduct a *Jackson-Denno* hearing, and Hogan's trial counsel responded that such a hearing was not necessary because, in his statement, Hogan denied any involvement in the crime. Later, the court repeated its question about the necessity of a *Jackson-Denno* hearing, and Hogan's counsel reiterated that such a hearing was unnecessary because Hogan's statement was a denial of any wrongdoing, not a confession.

At the motion-for-new-trial hearing, trial counsel testified that he did not challenge the admission of Hogan's custodial statement because, in the statement, Hogan denied any involvement in the crime, and the admission of the statement would obviate the need for Hogan to testify and be subjected to cross-examination. Further, counsel testified that he discussed the matter with Hogan, and it was part of their trial strategy for the jury to hear Hogan denying involvement in the robbery shortly after it occurred.

Thus, trial counsel's decision not to challenge the admission of Hogan's custodial statement was based upon a reasonable trial strategy of allowing the jury to hear that Hogan denied committing the robbery shortly after it occurred, instead of Hogan giving the same testimony at trial where he would be subjected to cross examination. As such, Hogan cannot show that his counsel was ineffective for failing to request a *Jackson-Denno* hearing or otherwise challenge the admission of this evidence.[14] Furthermore, Hogan has made no showing that his custodial statement was involuntary or that it would have been excluded if a hearing had taken place. Therefore, he cannot demonstrate that he was prejudiced by counsel's decision not to request a *Jackson-Denno* hearing.[15]

---

[14] *See Lowe v. State*, 259 Ga. App. 674, 676 (2) (578 SE2d 284) (2003) (finding that counsel was not ineffective for failing to request a *Jackson-Denno* hearing when the custodial statement was exculpatory and counsel wanted the jury to hear it); *see also Davis v. State*, 290 Ga. 584, 586-87 (2) (b) (723 SE2d 431) (2012) (finding that counsel presented a reasonable trial strategy and was not ineffective for introducing a videotape of defendant's interrogation by police when counsel believed the video supported defendant's self-defense claim and that it cast a favorable light on the defendant); *Floyd v. State*, 293 Ga. App. 235, 237 (3) (a) (666 SE2d 611) (2008) (noting that "[d]eciding what evidence to present or to forego in defending a client charged with a crime is a matter of strategy and tactics, and matters of reasonable trial strategy and tactics do not amount to ineffective assistance of counsel" (punctuation omitted)).

[15] *Bryant v. State*, 320 Ga. App. 838, 843 (4) (b) (740 SE2d 772) (2013) (finding that appellant could not show that he was prejudiced by counsel's failure to

3. In a related claim, Hogan argues that the trial court erred by failing to conduct a *Jackson-Denno* hearing *sua sponte* to determine the admissibility of his custodial statement. This claim is likewise without merit.

Generally, *Jackson-Denno* hearings are required to determine the voluntariness of an incriminating custodial statement, but no such hearing was required here because in Hogan's statement he vehemently denied any involvement in the crime.[16] And even if Hogan's statement had been incriminating, the trial court did not err in failing to hold a hearing *sua sponte* because Hogan did not challenge the admission

---

request a *Jackson-Denno* hearing when appellant made no showing that his statements were involuntary or would have been excluded at such a hearing); *Mitchell v. State*, 250 Ga. App. 292, 296 (2) (a) (551 SE2d 404) (2001) (finding that counsel was not ineffective for failing to request a formal *Jackson-Denno* hearing when defendant made no showing that his custodial statement was involuntary).

[16] *See Jackson v. State*, 225 Ga. 39, 46 (6) (165 SE2d 711) (1969) (holding that a *Jackson-Denno* hearing was not required when no confession or incriminating statements were made); *Lowe*, 259 Ga. App. at 676 (2) (finding that no *Jackson-Denno* hearing was required when, *inter alia*, defendant did not confess to any crime in his statement); *Carter v. State*, 239 Ga. App. 549, 550 (1) (521 SE2d 590) (1999) (explaining that "[a] *Jackson-Denno* hearing provides a mechanism for a defendant to challenge the voluntariness of a *confession*" (emphasis supplied)); *Elder*, 162 Ga. App. at 425 (noting that *Jackson-Denno* hearings are required when "*the voluntariness of a confession is questioned*").

10

of his statement at trial or assert that it was involuntarily made.[17] In fact, the trial court *twice* asked Hogan if he wanted a *Jackson-Denno* hearing, and he declined both offers. Moreover, Hogan cannot show that the trial court erred by failing to hold such a hearing when he has made no proffer of what evidence he would have offered to show that his statement was involuntary.[18] Thus, the trial court was not required to conduct a *Jackson-Denno* hearing *sua sponte.*

4. Lastly, Hogan argues that the trial court erred by failing to declare a mistrial based on the State's failure to prove proper venue. Once again, we disagree.

To begin with, we note that whether to declare a mistrial is in the discretion of the trial court and will not be disturbed on appeal unless "it is apparent that a mistrial

---

[17] *See Smith v. State*, 263 Ga. 782, 784 (2) (a) (439 SE2d 483) (1994) (noting that "[a]bsent a proper objection to a statement's admission, due process does not require a separate hearing as to the voluntariness of the statement"); *Wilson v. State*, 254 Ga. 679, 681 (2) (333 SE2d 589) (1985) (explaining that "[i]t is well settled that [when] there is no challenge to the voluntariness of a statement the court is under no duty to sua sponte call for a separate hearing"); *Richardson v. State*, 265 Ga. App. 880, 883 (2) (595 SE2d 678) (2004) (finding that the trial court did not err in admitting appellant's custodial statement when appellant never challenged the voluntariness of the statement).

[18] *See Jackson*, 225 Ga. at 46-47 (6) (rejecting appellant's argument that the trial court erred in failing to conduct a *Jackson-Denno* hearing when appellant neglected to show what evidence he would have presented at such a hearing).

is essential to the preservation of the right to a fair trial."[19] Further, we have explained that the Georgia Constitution requires that "venue in all criminal cases be laid in the county in which the crime was allegedly committed."[20] Of course, the standard of review is whether, "considered in the light most favorable to the prosecution, the State proved the essential element of venue beyond a reasonable doubt."[21] And in this respect, our Supreme Court has held that, "[v]enue may be proven by both direct and circumstantial evidence."[22] Finally, whether the evidence as to venue satisfied the reasonable-doubt standard is "a question for the jury, and its decision will not be set aside if there is any evidence to support it."[23]

---

[19] *Rafi v. State*, 289 Ga. 716, 720 (4) (715 SE2d 113) (2011) (punctuation omitted).

[20] *Muldrow v. State*, 322 Ga. App. 190, 192 (2) (a) (744 SE2d 413) (2013) (punctuation ommited); Ga. Const. art. VI, sec. II, par. VI ("[A]ll criminal cases shall be tried in the county where the crime was committed, except cases in the superior courts where the judge is satisfied that an impartial jury cannot be obtained in such county."); OCGA § 17-2-2(a).

[21] *Brewster v. State*, 300 Ga. App. 143, 144 (684 SE2d 309) (2009).

[22] *Armstrong v. State*, 286 Ga. 420, 421 (2) (688 SE2d 629) (2010).

[23] *Barkley v. State*, 302 Ga. App. 437, 438 (691 SE2d 306) (2010) (punctuation omitted).

Here, a detective with the Macon Police Department testified that he responded to Hightower's call reporting an armed robbery at a convenience store located in "Macon, Bibb County, Georgia." Further, Hightower testified that the robbery occurred on Vineville Avenue, and evidence showed that the convenience store was at the intersection of Vineville Avenue and Hardeman Avenue. And given the detective's testimony that the convenience store was located in Bibb County; the close proximity between the store and the street where the robbery occurred;[24] that the detective worked for the City of Macon, which he described as being in Bibb County;[25] and that Hogan never claimed that he crossed county lines when he walked

[24] *See Trammell v. State*, 328 Ga. App. 45, 49 (2) (b) (761 SE2d 470) (2014) (finding that there was sufficient circumstantial evidence to prove venue when, *inter alia,* the crime occurred less than a block from a house located in the relevant county); *Perkins v. State*, 319 Ga. App. 651, 654 (2) (738 SE2d 106) (2013) (noting that establishing the venue of a nearby site does not establish venue of the crime scene, but finding that there was sufficient circumstantial evidence to prove venue when there was a close proximity between those two locations *and* a police detective who on the case was employed by the relevant county).

[25] *See Chapman v. State*, 275 Ga. 314, 317 (4) (565 SE2d 442) (2002) (noting that, in holding that the state proved venue, it is a "well-settled principle that public officials are believed to have performed their duties properly and not to have exceeded their authority unless clearly proven otherwise"); *accord Price v. State*, 303 Ga. App. 859, 865 (4) (a) (694 SE2d 712) (2010). *But see In the interest of B. R.*, 289 Ga. App. 6, 9 (2) (656 SE2d 172) (2007) (explaining that "the investigating officers' county of employment does not, in and of itself, constitute sufficient proof of venue to meet the beyond a reasonable doubt standard").

from the convenience store to the location of the robbery,[26] there was sufficient circumstantial evidence to prove venue beyond a reasonable doubt.

For all of the foregoing reasons, we affirm Hogan's convictions.

*Judgment affirmed. Doyle, P. J., and Miller, J., concur.*

---

[26] *See Brewster*, 300 Ga. App. at 145 (finding that there was sufficient evidence to prove venue when, *inter alia*, the arresting officer first encountered defendant in the relevant county and defendant made no claim that he crossed county lines while being pursued by the officer).