303 Ga. 731
FINAL COPY

S18A0453. FAUST v. THE STATE.

BENHAM, Justice.

Appellant Antonio Faust was convicted for various crimes related to the

kidnapping of Michael Pippins and the shooting death of David McMillan III.[1]

Appellant's sole enumeration of error is that the State failed to prove venue

---

[1] The crimes against Michael Pippins occurred on May 17, 2013. On August 13, 2013, in relation to Pippins, a DeKalb County grand jury indicted appellant on charges of armed robbery, kidnapping, aggravated assault with a deadly weapon, and theft by taking. The crimes against David McMillan III occurred on May 18, 2013. In a separate indictment also issued on August 13, 2013, a DeKalb County grand jury, in relation to McMillan, indicted appellant on charges of malice murder, two counts of felony murder, aggravated assault with a deadly weapon, aggravated assault with an intent to rob, and possession of a firearm during the commission of a felony. At the State's request, the trial court joined the two indictments so that the matters would be resolved in a single trial. The trial court conducted a jury trial from August 11-14, 2015, at the conclusion of which the jury returned verdicts of guilty on all charges. Appellant was sentenced to life in prison for malice murder (McMillan), five years to be served consecutively to the life sentence for possession of a firearm during the commission of a felony (McMillan), 20 years for armed robbery (Pippins) to be served concurrently with the sentences related to McMillan's death, ten years for kidnapping (Pippins) to be served consecutive to the count of armed robbery (Pippins), and ten years to serve for theft by taking (Pippins) to be served consecutively to the sentence for kidnapping (Pippins). The felony murder counts were vacated as a matter of law and the other remaining counts were merged for sentencing purposes. Appellant moved for a new trial on August 28, 2015, and amended the motion on July 8, 2016. On July 21, 2016, the trial court held a hearing on the motion as amended and denied it on March 16, 2017. Appellant filed a notice of appeal on April 7, 2017, and an amended notice of appeal on June 6, 2017. Upon receipt of the record from the trial court, the case was docketed to the term of this Court beginning in December 2017 and submitted for a decision to be made on the briefs.

beyond a reasonable doubt in regard to the crimes appellant committed against Pippins. For reasons set forth below, we affirm.

Viewed in a light most in favor of upholding the jury's verdicts of guilty, the evidence shows as follows. Pippins testified he worked as a security guard at an apartment complex where he met appellant, who was a transient teenager. Pippins testified he allowed appellant to sleep at his apartment on approximately three occasions during the four months preceding the incident at issue. In the early morning hours of May 17, 2013, Pippins testified he arrived home to find appellant sitting on his front porch. Pippins said that before exiting his vehicle he stored his service weapon, a .380 pistol, on the back floor of his vehicle. Pippins allowed appellant to sleep inside his home for the night. In the morning, Pippins testified he and appellant got into his vehicle with the intent of driving to Pippins' mother's house. Pippins testified appellant asked for cigarettes, so he stopped at a gas station convenience store on Covington Highway and Phillips Road. Pippins exited the vehicle and went into the store, while appellant stayed inside the vehicle. Pippins testified he returned to the vehicle with appellant's cigarettes, restarted the vehicle and continued driving up Covington Highway. At this point, Pippins said he reached back to feel for his gun and discovered it was missing. Pippins

testified he pulled over and stopped the car along Covington Highway, but the two men did not exit the vehicle. Pippins testified he told appellant to give him the gun. According to Pippins, appellant was talking on one of Pippins' two cell phones when Pippins demanded the gun. Pippins testified appellant pulled the gun out and shot it twice down toward Pippins' feet inside the car, took Pippins' second cell phone, and told Pippins to take him where he needed to go. While appellant held him at gunpoint, Pippins testified he continued to drive on Covington Highway until he reached a road called Glenwood. Pippins testified he turned onto Glenwood and continued to drive on that road until it intersected I-285. Pippins testified at this point appellant demanded Pippins give him his wallet. Appellant then directed Pippins to turn off the main road, going down "off Austin Drive by Towers [H]igh [S]chool." Pippins testified that appellant directed him to the Peachcrest area. Still at appellant's direction and at gunpoint, Pippins turned into a Salvation Army parking lot. At this point, appellant exited the vehicle.[2] Pippins drove away from the Salvation Army parking lot, ultimately stopping at a house located on Tulip Drive where a woman called 911 for him. At trial, the records custodian for the DeKalb

---

[2] According to Pippins' written statement to police, which was completed on a DeKalb County police "Statement Form" and admitted as an exhibit at trial, Pippins described the area where appellant exited the vehicle as Peachcrest.

County police department appeared and authenticated the 911 call which was played for the jury.

Officer T.A. Green testified he responded to the Tulip Drive address as a part of his duties as a DeKalb County police officer. Officer Green testified that he asked Pippins what happened during the incident and also retrieved two .380 shell casings from inside Pippins' car. Officer Green testified that "this incident" Pippins described to him occurred in unincorporated DeKalb County. Officer J.D. Paden, who was a DeKalb County police officer in the robbery unit, testified he interviewed Pippins and showed him a photographic lineup during which Pippins identified appellant as the perpetrator.[3] As the lead investigator on the case, Officer Paden testified he secured a warrant for appellant's arrest.

In the early morning hours of May 18, appellant met McMillan at a gas station. In his statement to DeKalb County police, which was audio recorded and played for the jury, appellant stated he entered McMillan's truck and gave directions for McMillan to drive to a street in the Peachcrest area where the two pulled over and smoked marijuana inside the truck. The street in question

---

[3] The trial record also shows Pippins provided a written statement at the DeKalb County police station.

was Pinehill Drive, and an investigating officer testified that this Pinehill Drive location was in DeKalb County. McMillan asked if appellant was a police officer, and appellant became upset. In his statement to police, appellant said he fired the gun he had near McMillan's knee.[4] Appellant told police that his intent was to rob McMillan. Appellant said McMillan exited the vehicle and attempted to flee, so appellant chased him. Appellant told police he had a struggle with McMillan and the gun went off. Appellant told police he had only intended to rob McMillan and the robbery had gone wrong.

An eyewitness to the McMillan shooting testified at trial. The eyewitness testified that he heard people arguing outside his bedroom window in the early morning hours of May 18. He looked out of his window to see two people arguing in a truck. The eyewitness went down to the front door of his home and continued to watch the occupants of the truck from there. The eyewitness testified the driver exited the truck and then the passenger exited the truck. The eyewitness said the passenger started chasing the driver around the truck until the driver slipped, at which point the passenger shot the driver twice. After the shooting, the eyewitness said the passenger walked away.

---

[4] Police discovered a bullet hole in the driver side door of McMillan's truck.

At the time the crimes at issue in this case occurred, appellant was on juvenile probation and reported to a probation officer. Appellant's probation officer provided a written statement to DeKalb County police[5] and also testified at trial. The probation officer testified that appellant reported to her office on May 21, 2013, and told her that he had committed some robberies and possibly killed someone. In her written statement, the probation officer noted that appellant said he committed the crimes in the Peachcrest area where he stayed. Also in her written statement to police, the probation officer stated she learned that there was a warrant for appellant's arrest which discovery led her to contact DeKalb County police.

At trial, the medical examiner testified McMillan died of a gunshot wound to the torso and that he recovered a bullet from McMillan's body during the autopsy. In addition to the shell casings recovered from Pippins' vehicle, police also recovered shell casings from the McMillan crime scene. A ballistics examiner testified he examined Pippins' stolen firearm,[6] two shell casings from Pippins' vehicle, two shell casings from the McMillan crime

---

[5] This written statement was admitted as an exhibit at trial.

[6] Appellant told police he gave Pippins' firearm to someone after the McMillan shooting. Pippins provided a serial number for the firearm which DeKalb County police recovered from another law enforcement agency in 2014.

scene, and the bullet recovered from McMillan's body. He testified the bullet recovered from the body and the four shell casings from both crimes were all fired from Pippins' stolen firearm.

Appellant testified at trial. He denied robbing and kidnapping Pippins and denied killing McMillan; however, he admitted that he told his probation officer that he had committed the crimes in question. Appellant also testified that he lied to police about having a physical altercation with McMillan.

1. Aside from venue as it relates to the crimes against Pippins, which we address in Division 2, infra, appellant does not dispute that the evidence was legally sufficient to sustain his convictions for crimes against both victims. Nevertheless, we have independently reviewed the record and conclude that the evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that appellant was guilty of the crimes for which he was convicted. See Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Appellant alleges the State failed to prove venue beyond a reasonable doubt regarding the crimes against Pippins—armed robbery, aggravated assault, kidnapping and theft by taking. The Georgia Constitution requires a criminal case to be tried in the county where the crime was committed. See

Ga. Const. of 1983, Art. VI, Sec. II, Par. VI. The record shows the crimes against Pippins occurred entirely in his vehicle while in transit. OCGA § 17-2-2 (e) provides:

> **Crime committed while in transit.** If a crime is committed upon any railroad car, vehicle, watercraft, or aircraft traveling within this state and it cannot readily be determined in which county the crime was committed, the crime shall be considered as having been committed in any county in which the crime could have been committed through which the railroad car, vehicle, watercraft, or aircraft has traveled.

(Emphasis in original.) In addition, OCGA § 17-2-2 (h) provides:

> **Crime in more than one county**. If in any case it cannot be determined in what county a crime was committed, it shall be considered to have been committed in any county in which the evidence shows beyond a reasonable doubt that it might have been committed.

(Emphasis in original.) This Court has held that "venue may be proven by circumstantial evidence, and it generally is a question for the jury." Walton v. State, 293 Ga. 607 (2) (748 SE2d 866) (2013). See also Pruitt v. State, 279 Ga. 140 (4) (611 SE2d 47) (2005).

On appeal, appellant contends the State was obligated to identify the county in which each discrete act against Pippins occurred as he drove appellant on the day in question. That was unnecessary, however, because there was sufficient evidence that venue was proper in DeKalb County for all

of the crimes for which appellant was convicted. The officer who responded to Pippins' 911 call and was privy to Pippins' initial explanation of what occurred, testified that he was a DeKalb County officer and that "this incident" occurred in unincorporated DeKalb County. Pippins also gave a written statement to DeKalb County police, identifying the roadways he traveled, including stating that appellant finally exited his car in the Peachcrest area. The Peachcrest area was the same place where McMillan's body was found on a street called Pinehill Drive. During the trial, an officer testified that Pinehill Drive was located in DeKalb County. Appellant told his probation officer that he had committed crimes against both victims in the Peachcrest area where he stayed, and she contacted DeKalb County authorities as a result of his admissions to her, as well as gave a written statement to DeKalb County police. The DeKalb County police department led the investigation of the crimes against Pippins.[7] "[P]ublic officials are believed to have performed their duties properly and not to have exceeded their authority unless clearly proven otherwise." Chapman v. State, 275 Ga. 314 (4) (565 SE2d 442) (2002). As

---

[7] At the request of the DeKalb County police department, experts from the Georgia Bureau of Investigation examined and testified about physical evidence collected from the crimes, as well as performed McMillan's autopsy.

such, the jury was authorized to infer that DeKalb County Officer Green, who responded to the 911 call, and DeKalb County Officer Paden, who was the lead investigator of the crimes against Pippins, acted within the scope of their territorial jurisdiction.  See id. at 318.[8]  See also Propst v. State, 299 Ga. 557 (1) (b) (788 SE2d 484) (2016) (the fact that Walton County authorities responded to the intersections where shooting occurred and the scenes where the robberies occurred constituted circumstantial evidence of venue for the crimes at issue).   Accordingly, sufficient evidence existed for the jury to find beyond a reasonable doubt that the crimes against Pippins were committed in DeKalb County.

Judgment affirmed.  All the Justices concur.

---

[8] This is not a situation where the investigating officers' jurisdiction includes more than one county.  See, e.g., Jones v. State, 272 Ga. 900 (3) (537 SE2d 80) (2000) (since the City of Atlanta police officers patrolled both Fulton and DeKalb Counties, the fact that City of Atlanta officers investigated the case was insufficient to establish venue in Fulton County).

Decided May 21, 2018.

Murder. DeKalb Superior Court. Before Judge Johnson.

Kevin A. Anderson, for appellant.

Sherry Boston, District Attorney, Anna G. Cross, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Scott O. Teague, Assistant Attorney General, for appellee.