## LEE *v.* THE STATE.

No. 9265. JANUARY 10, 1933.

*O. C. Darsey* and *M. Price,* for plaintiff in error.

*Lawrence S. Camp, attorney-general, J. T. Grice, solicitor-general,* and *T. R. Gress, assistant attorney-general,* contra.

BECK, P. J. Henry Lee was indicted for the murder of John McClennon, and on the trial the jury returned a verdict of guilty, with a recommendation. A motion for a new trial was made, and upon the hearing was overruled, and to that judgment the defendant excepted.

Besides the usual general grounds in the original motion for

a new trial, two other grounds were added by amendment. The first of these is based upon the ground that C. L. Barnhill, a member of the jury trying the defendant, was disqualified because of prejudice and bias against the defendant, and his mind was not impartial as between the State and the accused. To support this ground the affidavits of L. G. Mitcham and F. L. Baker were introduced, who deposed that before the trial they heard C. L. Barnhill, in a conversation, say, referring to the case of the State against Henry Lee for the killing of McClennon, "If there ever was a man who ought to get the electric chair, it was this negro, and he will get it." M. Price, one of the attorneys who represented Henry Lee on the trial, made an affidavit deposing that on April 15th or 16th, 1932, in a conversation with C. L. Barnhill, the juror referred to, the latter said, when told of what Baker and Mitcham claimed Barnhill had said with reference to the said Henry Lee, stated to deponent that he did not remember whether he made the statement or not; and thereupon Mr. Darsey, the other attorney who represented the defendant, said to the juror, "Why, Mr. Barnhill, it has not been so long but what you should remember whether you said it or not; all we want is the truth about it;" and then he said, in substance, "I would not swear one way or the other, whether I said it or not." Barnhill made an affidavit as a part of the counter-showing for the State, in which he positively denied making the statement which Baker and Mitcham had attributed to him; denied that he made either that statement or any similar statement. In view of this counter-showing made by the State as to the saying of the juror upon which this ground of the motion is based, it was within the discretion of the judge to overrule the same.

■ The other ground of the motion is based upon the contention that the verdict was without evidence to support it, "because the venue in said case was not proved as required by law, it nowhere appearing from the evidence that the killing occurred in Long County, Georgia." Under the evidence as to venue, the court did not err in overruling this ground. There is evidence to show that the homicide occurred at the house of one Fanny Brown, and the testimony shows that this house is in Long County. Fanny Brown testified: "Shortly before he [McClennon] got shot he was sitting on my porch. . . I saw a man step beside the road near my house, ten feet from the steps, . . and he said, 'You mistreated

me, and you're due me satisfaction.' He threw up a gun or something towards the porch. McClennon was still on the porch. I jumped up and ran in the house and slammed the door. John McClennon jumped off the porch. He didn't go towards the man with the gun; he was going the other way when I saw him, with his back towards the man with the gun, and running. I heard a gun fire once. I did not hear anybody say anything." On cross-examination the same witness testified, in part: "Between the time McClennon came and the time the man with the gun appeared, it was about twenty-five minutes. . . It might have taken us longer than ten minutes to come home from Hattie Stafford's. I don't know. The sheriff said it was a quarter of a mile from Hattie's house to mine. The man with the gun said, 'You mistreated me, and are due me satisfaction.' I don't know what he meant. . . The dead man jumped off the porch, and then I jumped inside, and it all happened about the same time. The man with the gun was as far from me as that corner chair, I reckon. He might have been a little closer. Hattie jumped too. When the man said that, he threw the gun up and pointed it toward the porch. I don't know whether he had the end pointed down or up. I jumped and ran. When I came out of my house there was nobody there but John Sims. By the time I could slam the door the gun fired. When I jumped up the dead man jumped down from the porch. When my eyes whirled around they could not be on the dead man. I don't know what he did after I turned, whether he went towards the man with the gun or not. All I know is, at the sight of the gun I went in the house." Lee Adams testified, in part: "I saw McClennon sitting on the porch. He was within five or six feet of these two women, right on the edge of the porch. I was within twelve or fifteen yards of Fannie Brown's house. . . While standing there I saw Henry Lee standing up. He said, 'You mistreated me,' and then he shot, all about the same time. . . He said 'You mistreated me, and I'm going to kill you.' All three on the porch ran. The next time I looked around there was nobody there. I saw this fellow going around the house, John McClennon. He was going from Henry Lee at the time, with his back turned towards him. . . Henry Lee shot when he spoke and said he was going to shoot, just a few minutes after that. McClennon was going fast when I heard the gun. At that time I reckon

he had gotten eight or ten feet further, about the other side of that door." Another witness for the State testified, in part: "As soon as Lee spoke, McClennon jumped from the edge of the porch and went running, whirled and started around the house. By that time the gun shot."

There was evidence tending to show that the accused was guilty of the crime with which he was charged. That which is quoted above is directly in relation to the question of venue. It was testified that Fannie Brown's house was in Long County. The killing occurred at her house. The jury were authorized to believe the evidence of the witnesses who stated that the deceased was running around the house. From this evidence the jury were authorized to find that the venue was as it is laid in the indictment. In the case of *Womble* v. *State,* 107 *Ga.* 666 (33 S. E. 630), it was said: "When all of the evidence introduced on the trial of a criminal case strongly and decidedly tended to show that the offense was committed in the county where the trial was had, and there was no evidence warranting even a bare conjecture that it was committed elsewhere, it will be held that the venue was sufficiently proved." See also *Smiley* v. *State,* 66 *Ga.* 754, and *Johnson* v. *State,* 62 *Ga.* 299. The ruling made in *Futch* v. *State,* 90 *Ga.* 472 (16 S. E. 102), may lay down a rule apparently in conflict with the ruling here made, but it is not necessarily in conflict, and we follow the ruling made in the *Womble* case and the two other cases above cited, which are older than the *Futch* case.

*Judgment affirmed. All the Justices concur.*