## CAMPBELL *v*. THE STATE.

JENKINS, Chief Justice. 1. "After the fact of conspiracy shall be proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all." Code, § 38-306.
(a) In the instant case, the evidence shows that the defendant and four other convicts overpowered the guards at a public-work camp and took their guns, and that while the defendant was absent the other escaping convicts posted a lookout and held the guards prisoner until the defendant returned some ten to fifteen minutes later with an automobile and all of them got into it and escaped. It is further shown that the homicide occurred on a road adjacent to the work camp when the

defendant stopped an automobile, shot the driver, and took his car. Grounds 1 and 2 of the amended motion for new trial assign error on the admission in evidence of that portion of the testimony of two named guards, relating to the acts and declarations of such other convicts which took place in the absence of the defendant, over the objection that it was irrelevant and prejudicial to the defendant, who alone was being tried on the charge of murder.

The evidence objected to was sufficient to establish the fact of conspiracy to escape from the work camp, and while it is true that the defendant was not being tried for the escape, nevertheless, since the homicide occurred in pursuance of such conspiracy, the evidence was admissible against the defendant, not only as relating to the acts and declarations of conspirators during the pendency of a criminal project, but also as being illustrative of the defendant's motive for arming himself and for procuring the automobile in which act the homicide occurred. See, in this connection, *Boone* v. *State*, 145 *Ga.* 37, 39 (88 S. E. 558); *Wall* v. *State*, 126 *Ga.* 86 (54 S. E. 815); *Wall* v. *State*, 153 *Ga.* 309, 316 (112 S. E. 142). It follows, therefore, that the trial court did not err in admitting such testimony in evidence, and the above assignments of error are without merit.

2. "When all of the evidence introduced on the trial of a criminal case strongly and decidedly tended to show that the offense was committed in the county where the trial was had, and there was no evidence warranting even a bare conjecture that it was committed elsewhere, it will be held that the venue was sufficiently proved." *Womble* v. *State*, 107 *Ga.* 666 (3) (33 S. E. 630); *Johnson* v. *State*, 62 *Ga.* 299; *Smiley* v. *State*, 66 *Ga.* 754; *Lee* v. *State*, 176 *Ga.* 215, 218 (167 S. E. 507).

(a) Ground 3 of the amended motion for new trial complains that the State did not establish venue of the homicide. A summary of the evidence bearing on this question is as follows: The defendant made this statement: "Well, I went over the hill and went down to the road there and flagged a car, and he stopped and I opened the front door of the car and took my pistol out of my pocket and put it down by the side of my leg, and I told him I had escaped from the rock quarry and that I wanted his car. I had one foot up on the running board of the car, and he started to drive off, and when he pulled off the car jerked and I tried to catch hold of the window of the door of the car and the gun went off, and after the gun went off he went about that far and stopped (indicating) and said, 'What you mean?' and I told him to get out and let me have his car, and he slid out under the wheel and I caught him by the shoulder and arm and I did not know he was shot." Norman Lambert testified for the State: "I was driving that bread truck down the Black Bluff Road at about 11:30. I went by the stockade. Between the stockade and fifty to seventy-five yards on beyond it, I saw somebody in the road. There was a car coming up the road and there was a colored boy standing there with a rag in his hand flagging it and the car rolled up to him and stopped. I was on top of the hill and by the time I got to the car it was in a dead stop. Mr. Chandler (the deceased) was driving that car. I knew him before his death. His car was a forty-model Oldsmobile. . . It was down below

the dynamite house. There had been some new gravel put in the road along there. In State's exhibit (5) I see the little dynamite house. That is the one I referred to in my testimony. I do not see the point approximately where the car was stopped. It would be over on around the curve from here, 150 to 200 yards from the dynamite house. There was some new gravel around this curve and the car was stopped right on the gravel." There was other evidence that the body of the deceased was found 10 to 15 feet from the dynamite house above referred to. J. E. Rogers, one of the guards at the rock quarry, in testifying for the State, identified from photographs the location of the stockade, the rock quarry, and the dynamite house with reference to the Black Bluff Road which runs past these objects. He further described the route taken by the defendant in leaving the rock quarry, and identified the hill over which the defendant made his way to the Black Bluff Road, and stated that the defendant was gone from the rock quarry only from ten to fifteen minutes before he returned with a car and effected the escape of the other convicts. He further stated that "all of these things I have testified to occurred in Floyd County, Georgia." It is contended that the above evidence shows that the homicide occurred some 150 to 200 yards from where the body of the deceased was found; and that, while the State did prove that the body was found in Floyd County, Georgia, it did not prove that the homicide occurred there. As we interpret the evidence, and under the rules of law above set forth, this contention is without merit. While there is no positive evidence as to the exact location on the Black Bluff Road where the homicide actually occurred, it is nevertheless inferable from the defendant's statement that the fatal shot was fired at or near the location on the road where the deceased's car was seen stopped; and there is further evidence that the car was stopped some 150 to 200 yards from the above-mentioned dynamite house and could be seen from a position on the road 50 to 75 yards from the county stockade. It follows that—since it is unquestioned that the body was found on the Black Bluff Road in Floyd County, some 15 feet from the dynamite house, and that the Black Bluff Road ran past the stockade, the rock quarry, and the dynamite house, and the hill over which the defendant escaped to reach said road, and since all of these places were identified as being in Floyd County, Georgia, and in the total absence of any evidence whatever which might raise even a bare conjecture that the crime was committed elsewhere than in Floyd County—the State has established beyond a reasonable doubt that the crime was committed in Floyd County, as charged in the indictment. See *Dowdell* v. *State*, 200 *Ga.* 775, 781 (38 S. E. 2d, 780); *Rider* v. *State*, 196 *Ga.* 767 (3) (27 S. E. 2d, 667).

3. In the instant case, the indictment for murder was supported both by circumstantial and direct evidence. It follows, therefore, that special grounds 4 and 5, which assign error on the ground that one element of the case, that of venue, was proved, if at all, by circumstantial evidence, and that under such circumstances it was the duty of the trial judge to charge without request the law relating to such evidence, is without merit. Particularly is this true in the instant case, where there was no issue of fact presented on the question of venue. *Nobles* v. *State*, 127

*Ga.* 212 (5) (56 S. E. 125); *Bass* v. *State,* 152 *Ga.* 415, 416 (10) (110 S. E. 237); *Jones* v. *State,* 147 *Ga.* 356 (3) (94 S. E. 248). The rule is otherwise where the conviction of the accused rests entirely upon circumstantial evidence. *Hamilton* v. *State,* 96 *Ga.* 301 (22 S. E. 528).

4. The court charged the general principles of law with respect to venue and burden of proof, and since venue was sufficiently proved, and there was no written request to charge more fully upon these subjects, special ground 6, which complains of the failure to charge in connection with the element of venue that it must be proved beyond a reasonable doubt, is without merit. *Haden* v. *State,* 176 *Ga.* 304, 312 (15) (168 S. E. 272); *Keys* v. *State,* 112 *Ga.* 392 (3) (37 S. E. 762, 81 Am. St. R. 63).

5. The trial court, after charging that it would be murder if the killing happened in the commission of an unlawful act punishable by confinement in the penitentiary, stated: "I charge you, gentlemen of the jury, that the holding up of one in an automobile with a pistol is an unlawful act as would subject the one guilty thereof, upon conviction, to confinement in the penitentiary." This charge was fully authorized by the evidence, and is not subject to the objection urged "that it constitutes an intimation by the trial judge that the defendant was guilty, and practically directed a finding of guilty."

6. In concluding his instructions to the jury, the trial judge stated: "The jury is not responsible for the consequences of its verdict. The jury is responsible for the truth of its verdict." This excerpt from the charge is not subject to the objection urged that it indicated the court's belief that the death penalty was the proper punishment in this case and a persuasion of the jury to inflict it by relieving them of worry as to the consequences of their verdict.

7. The verdict of guilty was amply authorized by the evidence. The general grounds of the motion for new trial are, therefore, without merit.

*Judgment affirmed. All the Justices concur, except Wyatt, J., who took no part in the consideration or decision of this case.*

No. 15948. October 14, 1947.

*Remer Denmark, John W. Maddox,* and *W. T. Maddox,* for plaintiff in error.

*Eugene Cook, Attorney-General, E. J. Clower, Solicitor-General, G. W. Langford, T. J. Espy Jr.,* and *Mary B. Rogers,* contra.