**SECOND DIVISION**
**MILLER, P. J.,**
**ANDREWS and BROWN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

May 24, 2018

# In the Court of Appeals of Georgia

A18A0006. IN THE INTEREST OF M. C., A CHILD.

MILLER, Presiding Judge.

The Walton County Juvenile Court adjudicated M. C. delinquent for having committed the offenses of aggravated assault upon a peace officer (OCGA § 16-5-21 (b) (2016)), attempting to elude a police officer (OCGA § 40-6-395 (a)), obstruction of an officer (OCGA § 16-10-24 (a) (2016)), and reckless driving (OCGA § 40-6-390 (a)). M. C. appeals from the denial of his motion for new trial, arguing (1) that during closing argument the State improperly commented on his assertion of his right to remain silent, and (2) the evidence was insufficient because the State failed to establish venue. First, we find no reversible error on the basis of a violation of M. C.'s constitutional right to remain silent. We determine, however, that although the evidence was sufficient to support venue for the charge of attempting to elude a

police officer, the State did not establish venue as to the remaining offenses for which M. C. was adjudicated delinquent. Therefore, we affirm in part and reverse in part.

> When reviewing a challenge to the sufficiency of the evidence, we construe the evidence favorably to the juvenile court's judgment. We do not weigh the evidence or resolve issues of witness credibility, but merely determine whether a rational trier of fact could have found that [M. C.] committed the acts charged in the delinquency petition.

(Citations omitted.) *In the Interest of M. S.*, 292 Ga. App. 127 (664 SE2d 240) (2008).

Viewed in this light, the evidence shows that while an officer with the Loganville Police Department was on patrol, his "tag reader" alerted him to a passing stolen vehicle, driven by M. C. The officer pursued the vehicle as it accelerated and drove through a grass field and a parking lot, and then onto Highway 78. Additional officers joined the chase, during which M. C. was driving at speeds of up to 126 miles per hour. During the pursuit, which spanned at least six miles, M. C. swerved and drove directly toward two of the police cars. Eventually, M. C. crashed into a tree, and he and the other juvenile in the vehicle fled on foot. Officers chased and apprehended them at the scene, and a gun was found in the glove compartment of the vehicle.

The State filed a delinquency petition against M. C., and the juvenile court found that he committed the offenses of aggravated assault upon a peace officer (two counts), attempting to elude a police officer, obstruction of an officer, and reckless driving.[1] M. C. moved for a new trial, claiming that during closing argument the State improperly commented on his silence, that the juvenile court wrongfully attached significance to his failure to testify, and that the evidence was insufficient to support the verdict as to all counts of the petition. The juvenile court denied the motion, and this appeal followed.

1. As his first enumeration of error, M. C. argues that a portion of the State's closing argument constituted an improper comment on his invocation of his right to remain silent. We discern no error on the part of the juvenile court.

> A comment upon a defendant's silence or failure to come forward is far more prejudicial than probative, and therefore will not be allowed. Nevertheless, to reverse a conviction, the evidence of the defendant's election to remain silent must point directly at the substance of the defendant's defense or otherwise substantially prejudice the defendant in the eyes of the jury.

---

[1] M. C. was also charged with possession of a pistol or revolver by a person under the age of 18 years (OCGA § 16-11-132), theft by receiving stolen property, (OCGA § 16-8-7), and possession of a firearm during the commission of a felony (OCGA § 16-11-106). He was acquitted of these offenses.

(Citations and footnotes omitted.) *Haggins v. State*, 277 Ga. App. 742, 747 (6) (627 SE2d 448) (2006). Further, insofar as M. C.'s silence could have been construed as evidence of his guilt, "[i]t is presumed that a trial judge, when he sits as the trier of fact, considered only legal evidence." (Citations omitted.) *Peek v. State*, 234 Ga. App. 731, 732 (2) (507 SE2d 553) (1998).

Here, during closing argument, the prosecuting attorney stated, "[w]ith regard to the vehicle . . . . Well, you've heard the officers. . . . [M. C.] didn't say anything, didn't talk to the officers, didn't give any statement." Defense counsel objected, after which the prosecuting attorney withdrew these remarks, but then added, "[w]ell, I can give the statement that he didn't give his name. Although he may not have given the statement of the facts of the case, he didn't provide a name, address, parents' information, nothing."

Assuming without deciding that these comments were improper, we observe that they were made in relation to the charge of theft by receiving stolen property, and the trial court acquitted M. C. of this offense. See *Dumas v. State*, 216 Ga. App. 643, 644 (455 SE2d 354) (1995) (considering the context of prosecutor's argument when determining "the natural and necessary impact of the statement") (citation omitted). Indeed, at the hearing on the motion for new trial, the juvenile court noted the context

4

of the challenged remarks, and that it had not found that M. C. committed the theft. Therefore, the juvenile court's judgment does not suggest that it considered any improper argument from the State in violation of M. C.'s constitutional right to remain silent, and reversal is not warranted on these grounds.

Relatedly, M. C. contends that the juvenile court drew "prejudicial inferences" from his failure to testify. He identifies the juvenile court's following statement, made after the close of evidence and before rendering the verdict: "[M. C.] didn't testify because he didn't have to testify, because [the other juvenile] was called by the State, and he laid out, in my opinion, the story . . . ."

Although the juvenile court commented on M. C.'s failure to testify, the transcript of the proceedings belies M. C.'s suggestion that he was adjudicated delinquent on this basis. Immediately after stating that the other juvenile had given an account of the events, the juvenile court referenced that testimony and stated that it had not found it credible, particularly given the video of the high-speed chase that the juvenile court had viewed. At the hearing on the motion for new trial, the juvenile court provided the following explanation for its remarks:

> I wasn't talking about the fact that, well, he didn't testify so I took that
> into consideration. It was just the fact that he didn't have to from a

5

strategy point from the attorney's point in his case, he doesn't have to call him because the other fellow testified for him. Again, "there was no jury that could have been influenced by the judge's comments," and, we presume that "the judge, as the trier of fact, is able to distinguish between competent and incompetent evidence and consider only that evidence which is admissible." (Citation omitted.) *Corsini v. State*, 238 Ga. App. 383, 385 (2) (519 SE2d 39) (1999). Therefore, we conclude that the record demonstrates that the juvenile court did not consider M. C.'s failure to testify as evidence of his guilt. See id. (no reversible error where the trial judge commented on appellant's failure to testify, but did so in explaining that the State's evidence was uncontradicted); see also *Moreland v. State*, 154 Ga. App. 375, 377 (2) (268 SE2d 425) (1980) (given context of judge's statements, and absent an "affirmative showing" that the judge failed to apply the proper standard in determining guilt, this Court would not "presume the judge's intentional or negligent failure to uphold appellant's constitutional rights in the performance of his function as the trier of fact").

2. Next, M. C. claims that the evidence was insufficient to support the verdict as to all counts because the State failed to establish venue in Walton County. We conclude that the evidence of venue was sufficient as to the charge of attempting to elude a police officer, but the evidence was insufficient to establish venue as to the remaining offenses for which M. C. was adjudicated delinquent.

6

In a delinquency proceeding, "[t]he standard of review on appeal to determine whether venue was sufficiently proved is the same as any other sufficiency review — whether, in the light most favorable to the prosecution, any rational trier of fact could have found venue beyond a reasonable doubt." (Citations and footnotes omitted.) *In the Interest of S. W.*, 337 Ga. App. 110, 111 (1) (786 SE2d 499) (2016).[2]

The officer who initiated the chase testified that he first observed M. C. while sitting in his patrol car on Highway 78, and he then began pursuing M. C. in an attempt to catch up with him. The officer later turned on his patrol car's lights and sirens on Highway 78 in Walton County. The evidence shows that M. C. did not stop the vehicle in response to the lights and sirens, and therefore, the juvenile court could have found venue proven beyond a reasonable doubt for the charge of attempting to elude a police officer. *Mack v. State*, 283 Ga. App. 172, 173 (1) (641 SE2D 194)

---

[2] M. C. did not explicitly raise a venue issue in the juvenile court, either at trial or in his motion for new trial. Nevertheless, he may raise it in the context of a sufficiency claim on appeal. *Lembcke v. State*, 277 Ga. App. 110, 112 (1) (b) (625 SE2d 505) (2005); *In the Interest of J. B.*, 289 Ga. App. 617, 618 (658 SE2d 194) (2008) ("When a charging document alleges that venue is proper in a certain county, and a defendant pleads not guilty in response to that charging document, he has irrefutably challenged all allegations contained therein, including those pertaining to venue.") (citation omitted).

(2007) (venue in Stephens County was properly shown because "offense of eluding the officers was complete at the moment [appellant] refused . . . to stop his vehicle despite the visual and audible signals to bring the vehicle to a stop.") (citation omitted).

Having thoroughly reviewed the record, however, including the video footage of the police chase, we cannot say that the State proved venue beyond a reasonable doubt for the charges of reckless driving, aggravated assault on the two officers, and obstruction, as charged in the delinquency petition.

The State charged M. C. with reckless driving by traveling at a high rate of speed and disregarding traffic control signals.[3] The aggravated assault charges were premised on M. C.'s swerving and driving toward two officers. Lastly, the petition alleged that M. C. ran after the crash despite being told to stop. The officer who initiated the chase testified that there was a distance of "six or seven" miles between his turning on his lights and sirens in Walton County, and M. C.'s eventual car crash.

---

[3] The investigating officer testified that when he turned on his lights and sirens in Walton County, the vehicle which M. C. was driving was traveling at a "very high rate of speed." Nevertheless, we cannot say that M. C. was driving recklessly at this point and that accordingly, venue was proven for this charge because the evidence that M. C. disregarded traffic control signals came later in the State's case, through the testimony of another officer.

Thus, the offenses set forth above occurred at various points along this span of at least six miles, during which the officers "[l]eft the city limits." Despite extensive testimony regarding the streets, highways and intersections on which all of these offenses occurred, the State failed to elicit any evidence that they occurred in Walton County.[4] *In the Interest of J. B.*, supra, 289 Ga. App. at 618-619 (street addresses and other locations in the record insufficient to establish venue).

Additionally, we cannot rely on the officers' employment as additional evidence regarding venue because the testifying officers were employees of the Loganville Police Department, and the record does not show that their jurisdiction was confined solely to Walton County. See *Frasier v. State*, 295 Ga. App. 596, 600 (3) (672 SE2d 668) (2009); *Bell v. State*, 291 Ga. App. 169, 170 (2) (661 SE2d 207) (2008) (where arrest was made by city police and State failed to show that city was located entirely within the county where trial was held, "jury was not authorized to find that, in the proper performance of their duties, the officers made the stop and arrest within the territorial jurisdiction of [the county]").

_____

[4] The only other mention of Walton County in the entire transcript was made when the prosecuting attorney fleetingly asked the other juvenile during cross-examination whether, at a certain point in the chase, M. C. regained control of the vehicle and drove *toward* Walton County.

9

We recognize that under OCGA § 17-2-2 (e), "[i]f a crime is committed upon any . . . vehicle . . . traveling within this state and *it cannot readily be determined* in which county the crime was committed, the crime shall be considered as having been committed in any county in which the crime could have been committed through which the . . . vehicle . . . has traveled." (emphasis supplied). This statute, however, "applies only when it cannot readily be determined in which county the crime was committed." *Thompson v. Brown*, 288 Ga. 855, 856 (708 SE2d 270) (2011). Here, the witnesses explicitly testified as to the location of the reckless driving, the aggravated assaults, and the obstruction; the State *could have* but simply failed to elicit that those locations were within Walton County. Thus, this statute is inapplicable here. Id. (statute inapplicable since location of crime could be ascertained); *Rogers v. State*, 298 Ga. App. 895, 899 (3) (c) (681 SE2d 693) (2009) (same).

The State's contentions on this issue of venue are all unavailing. First, the State argues that dash camera video footage was entered into evidence and viewed by the juvenile court, and this would have allowed the juvenile court to observe where the acts occurred. The record does not show that the juvenile court took judicial notice of any "geographical facts," so as to support a finding of venue, "[n]or are we, as a

10

reviewing court, free to resort to judicial notice to legitimize a judgment." *Bradley v. State*, 238 Ga. App. 490 (519 SE2d 261) (1999).

The State's attempt to analogize this case to *Ward v. State*, 270 Ga. App. 427 (2004) is similarly unpersuasive. In *Ward*, which also involved a police chase, officers expressly testified that the pursuit of the suspect both began and ended in Fulton County. Id. at 428. There is no such evidence here establishing that the entirety of the police chase was within the confines of Walton County, and the State's argument is especially problematic because this chase spanned at least six miles. *King v. State*, 271 Ga. App. 384, 387 (1) (609 SE2d 725) (2005) (fact that appellant was arrested in Ben Hill County, 200 yards away from the crime scene, did not prove venue in that county); compare *Brewster v. State*, 300 Ga. App. 143, 144 (684 SE2d 309) (2009) (evidence of venue sufficient where officer testified that he was patrolling in Newton County when he came into contact with appellants; identified the pursuit route on a map of Newton County; and testified that no portion of the route fell outside the map).

Also baseless is the State's contention that M. C. never presented evidence that any part of the incident occurred in a county other than Walton County. That is not M. C.'s burden. "[T]he State's burden never shifts to the defendant to disprove venue, as it is axiomatic that the evidentiary burden in a criminal prosecution is upon the State to prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt." (Citation omitted.) *Downs v. State*, 257 Ga. App. 696, 697-698 (1) (572 SE2d 54) (2002). Accordingly, we conclude that the State failed to establish venue with regards to the two counts of aggravated assault upon a peace officer, reckless driving, and obstruction of an officer, and we must reverse the delinquency adjudication as to these offenses. *In the Interest of D. D.*, 287 Ga. App. 512, 515 (2) (a) - (b) (651 SE2d 817) (2007).

Nevertheless, "the [S]tate may retry [M. C.] without violating the Double Jeopardy Clause [if] there was otherwise sufficient evidence at trial to support the defendant's delinquency adjudication for the crimes charged." (Citations omitted.) *In the Interest of D. D.*, supra, 287 Ga. App. at 512, 515 (2) (b).

We conclude that there was otherwise sufficient evidence on each of the four counts. The evidence that M. C. disregarded two red traffic lights while driving at 126 miles per hour, which was well above the speed limit, was sufficient to prove reckless

12

driving beyond a reasonable doubt. *Brown v. State*, 259 Ga. App. 819, 821 (578 SE2d 516) (2003). Likewise, the testimony that M. C. swerved and drove toward the two officers at a speed of at least 80 miles per hour, so close to the officers that they braced for impact, authorized the juvenile court to conclude that M. C. committed an aggravated assault upon both officers. *Dyer v. State*, 261 Ga. App. 289, 290 (1) (585 SE2d 81) (2003). Lastly, the evidence that M. C. fled on foot after the crash and did not heed the calls to stop sufficiently supported a finding of obstruction. *In the Interest of E. C.*, 292 Ga. App. 798, 800-801 (665 SE2d 896) (2008). Thus, the Double Jeopardy Clause does not bar retrial. *In the Interest of D. D.*, supra, 287 Ga. App. at 515 (2) (b).

In summary, we affirm M. C.'s adjudication of delinquency for attempting to elude a police officer and reverse his adjudications of delinquency for failure to prove venue on the remaining charges which are not barred from retrial by double jeopardy.

*Judgment affirmed in part and reversed in part. Andrews and Brown, JJ., concur.*