304 Ga. 862
FINAL COPY

S18A1212.  WORTHEN v. THE STATE.

NAHMIAS, Presiding Justice.

Appellant Trevis Worthen was convicted of malice murder and other crimes in connection with the shooting death of Tanieshia Evans.  In this appeal, he contends that the trial court improperly purported to merge his felony murder counts into his malice murder conviction, when they actually were vacated by operation of law.  That is true, but the error is harmless.  He also contends that the State failed to prove venue for most of the crimes.  That is not true — particularly because we have decided in this case to overrule Division 3 of Jones v. State, 272 Ga. 900 (537 SE2d 80) (2000), and to restore the authority of juries to make reasonable inferences regarding whether a location shown to be in a county is close enough to a crime scene to find that the crime was committed in the same county.  Accordingly, we affirm.[1]

---

[1] The victim was killed shortly after midnight on January 4, 2012.  On October 18, 2013, a Fulton County grand jury indicted Appellant for malice murder, two counts of felony murder, aggravated assault, possession of a firearm by a convicted felon, possession of a firearm during the commission of a felony, and criminal solicitation.  Appellant pled guilty to possession of a firearm

1.	Viewed in the light most favorable to the verdicts, the evidence at trial showed the following.  Late on the evening of January 3, 2012, Appellant and his friend Rashad Ballard drove to Evans's apartment building at 490 Angier Avenue in Fulton County to meet Brooke Stallworth, whom Appellant was dating, and Stallworth's friend Michelle Johnson.  Stallworth and Johnson were staying with Evans, the paternal grandmother of Stallworth's son.  Appellant parked his SUV on the street outside the apartment building, and he and Ballard remained in the vehicle as Stallworth and Johnson walked out to talk to them.

After Appellant, Ballard, Stallworth, and Johnson had been talking for about an hour, Evans called Stallworth and Johnson  separately to ask them to come back to the apartment.  During her call with Stallworth, Evans apparently

by a convicted felon and then, at a trial from August 14 to 18, 2014, the jury found him guilty of the remaining charges.  The trial court found Appellant to be a recidivist under OCGA § 17-10-7 (a) and (c) and sentenced him to serve life in prison for malice murder, a consecutive term of five years for possession of a firearm during the commission of a felony, a consecutive term of five years for criminal solicitation, and a concurrent term of five years for possession of a firearm by a convicted felon.  The court merged the aggravated assault count and purported to merge the felony murder counts into the malice murder conviction, although the felony murder verdicts actually were vacated by operation of law, as discussed in Division 2 below.  Appellant filed a timely motion for new trial. After an evidentiary hearing, the trial court summarily denied the motion on January 12, 2017. Appellant filed a timely appeal, and the case was docketed in this Court for the August 2018 term and submitted for decision on the briefs.

heard Appellant say that he was going to take Stallworth home with him and that she would be back in the morning. Evans then came out of her apartment and walked to the driver's side of Appellant's SUV to stand by Stallworth and speak to Appellant, who was still sitting in the driver's seat. Evans and Appellant began arguing. Evans told Appellant that he was not good enough for Stallworth, that he did not have enough money, and that he was not allowed to come to her apartment anymore. When Appellant tried to roll up his window, Evans grabbed it and pulled on it, causing the window to shatter.

Appellant then drove off. After stopping down the street at the stoplight at the intersection of Angier Avenue and Boulevard, however, Appellant drove in reverse back to where Stallworth, Johnson, and Evans were still standing outside the apartment building. Appellant asked Stallworth why Evans had broken his window, and Stallworth replied that Appellant should not have disrespected Evans. As Appellant and Stallworth argued, Evans walked up to the SUV and asked Appellant, "You want some more?" Appellant repeatedly said "move"; he then grabbed a .32-caliber revolver that was on his center console and fired a single shot at Evans, hitting her in the chest. Appellant drove away with Ballard. Evans was taken to a hospital, where she soon died

3

from the gunshot wound.

Stallworth and Johnson both identified Appellant as the man who shot Evans. In addition, tinted glass fragments found at the crime scene on Angier Avenue and down the road at the intersection of Angier Avenue and Boulevard were consistent with glass from the shattered window on Appellant's SUV.

Nearly three months after the shooting, Appellant was arrested in Austin, Texas. After he was returned to Georgia and booked into the Fulton County Jail, he asked another inmate about "getting rid" of two female witnesses — one named Brooke and one whose name started with an "M" — in exchange for money. Appellant wanted the inmate to meet up with Appellant's cousin, who had access to guns, to find out where the witnesses were living and kill them. The inmate instead provided this information to the police and testified against Appellant at trial.

Appellant also testified at trial, admitting that he shot and killed Evans but claiming that after she approached him and asked "You want some more?" he saw her reach for an object in her pants that looked like a black gun. Appellant said that he was afraid Evans would shoot and kill him. Stallworth and Johnson, however, testified that Evans never reached for a gun and did not have a gun,

4

and there was no evidence that a gun was found at the crime scene. The State also called Ballard to testify at trial, but he claimed not to recall anything about the night of the shooting.

Aside from venue, which we address in Division 3 below, Appellant does not challenge the legal sufficiency of the evidence supporting his convictions. Nevertheless, in accordance with this Court's practice in murder cases, we have reviewed the record and conclude that, when viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes of which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also Vega v. State, 285 Ga. 32, 33 (673 SE2d 223) (2009) ("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (citation omitted)).

2.      Appellant correctly contends that the felony murder counts actually were "vacated by operation of law" rather than "merged" into his malice murder conviction. See Graves v. State, 298 Ga. 551, 556 (783 SE2d 891) (2016). This error in nomenclature was harmless, however, because Appellant was not

convicted of or sentenced for the felony murder counts. See Southall v. State, 300 Ga. 462, 462 n.1 (796 SE2d 261) (2017).

3.     Appellant, who was indicted and tried in Fulton County, argues that the State failed to prove venue for the charge of malice murder and the associated charge of possession of a firearm during the commission of a felony.[2] Appellant asserts that although there was evidence that Evans's apartment building at 490 Angier Avenue was in Fulton County, this evidence was legally insufficient to establish that the location where Evans was fatally shot — the sidewalk or street just in front of the building — was in the same county. Appellant did not challenge venue at trial or present any evidence suggesting that the crimes were committed in another county. As explained below, we conclude that the evidence was sufficient to authorize the jury to find that the murder was committed in Fulton County as charged.

(a)     Unless venue must be changed to obtain an impartial jury, a criminal case must be tried "in the county where the crime was committed." Ga. Const.

---

[2] Appellant includes the felony murder and aggravated assault charges in his venue enumeration, but he was not convicted of or sentenced for those charges, so his claim regarding them is moot. See Bolling v. State, 300 Ga. 694, 697 n.2 (797 SE2d 872) (2017). Appellant does not dispute the proof of venue for his criminal solicitation conviction based on the inmate's testimony or for the possession of a firearm by a convicted felon charge to which Appellant pled guilty.

6

of 1983, Art. VI, Sec. II, Par. VI.  Generally, murder "shall be considered as having been committed in the county in which the cause of death was inflicted." OCGA § 17-2-2 (c).  Under this Court's precedent, "venue is a jurisdictional fact the State must prove beyond a reasonable doubt in every criminal case." Crawford v. State, 297 Ga.  680, 682 (777 SE2d 463) (2015).  The State may meet its burden at trial using either direct or circumstantial evidence, and "'the determination of whether venue has been established is an issue soundly within the province of the jury.'" Id. (citation omitted).  On appeal, this Court reviews a challenge to the sufficiency of the venue evidence just like we review a challenge to the evidence of guilt: "we view the evidence of venue 'in a light most favorable to support the verdict and determine whether the evidence was sufficient to permit a rational trier of fact to find beyond a reasonable doubt that the crime was committed in the county where the defendant was indicted.'" Propst v. State, 299 Ga. 557, 561 (788 SE2d 484) (2016) (citation omitted).

(b)    During Appellant's trial, a detective and an officer from the City of Atlanta Police Department, both of whom had investigated the fatal shooting, testified that "490 Angier Avenue" is in Fulton County.  Appellant maintains that "490 Angier Avenue" referred only to the location of Evans's apartment

7

building and did not include the sidewalk and street in front of the building where the shooting occurred.

The record shows, however, that the witnesses who testified that 490 Angier Avenue is in Fulton County used that address to refer to the entire crime scene. The detective testified that investigators "utilized that address as the crime scene location," and his crime scene drawing, which was admitted into evidence, describes the location of the crimes as "490 Angier Avenue NE," even though the sketch shows — in addition to Evans's apartment building — the street, the buildings on either side of Evans's building, and the intersection of Angier Avenue and Boulevard. The detective also identified several photographs of the "scene," which depict the buildings, sidewalk, street, and blood and broken glass on the street, as being "true and accurate representations of 490 Angier Avenue." In addition, the police officer testified that he responded to a call at "490 Angier Avenue" and that when he arrived "on the scene," he saw Evans lying on the sidewalk. The jury was entitled to conclude from this evidence that the witnesses who testified that "490 Angier Avenue" is in Fulton County were referring not exclusively to the apartment building with that street address or the precise metes-and-bounds description of that

8

property's legal boundaries, but more generally to include the area just in front of the building that encompassed the spot where Appellant shot and killed Evans.

(c) To support his claim that proof that Evans's apartment building is in Fulton County is insufficient to establish that the street and sidewalk in front of that building are in the same county, Appellant relies heavily on this Court's divided opinion as to Division 3 of Jones, 272 Ga. at 900. In Jones, the Court concluded — in a short discussion sandwiched between two significant holdings not questioned here — that venue had not been proven sufficiently because the only venue evidence presented at trial related to the county where the victim's neighbor lived, which was on Evans Drive "directly across the street from the murder victim's home" where the murder occurred. Id. at 903. Citing no authority, the majority declared that this evidence was "irrelevant" to the location of the murder because "[i]t is entirely possible that the neighbor's house is located in one county, while the houses located across the street are sited in an adjoining county." Id. at 903-904. Citing Bradley v. State, 238 Ga. App. 490 (519 SE2d 261) (1999), the majority added, "Moreover, a street name, standing alone, is never sufficient to establish venue, because streets frequently run

9

through more than one county." Jones, 272 Ga. at 904.

Then-Chief Justice Benham, joined by Justice Hunstein, dissented from that conclusion. The dissent explained correctly that Bradley was inapposite. In that case, the defendant was convicted of driving under the influence and failure to maintain lane, and the only venue evidence was a state trooper's testimony that he saw the defendant's vehicle weaving on Georgia Highway 3 and Baptist Camp Road; the Court of Appeals held that because the trooper did not indicate the county in which either road was located, no evidence was presented as to venue. See Bradley, 238 Ga. App. at 490. In Jones, by contrast, the neighbor's testimony specified that his house was located in Fulton County and the crime occurred in the house directly across Evans Drive, indicating that at least that portion of Evans Drive was in Fulton County. See 272 Ga. at 906-907 (Benham, C. J., dissenting).

But the dissent focused on the illogical premise of the majority's holding:

> While it is possible that houses that are directly across from one another, or even next door to each other, are in different counties since county lines may be drawn anywhere, there was no evidence in this case to suggest this possibility. Even if one were to speculate, reasonable people may differ as to whether this possibility creates a sufficient doubt under the law with respect to the venue question at hand because it is axiomatic that the majority

10

of houses located opposite each other on a particular street will be located in the same county.

Id. at 906. See also O'Donnell v. Smith, 294 Ga. 307, 314 & n.8 (751 SE2d 324) (2013) (Nahmias, J., concurring) (explaining that "[i]n the absence of evidence to the contrary . . . , jurors can very reasonably infer that a location within 100 yards of a location in a particular county is in the same county, since that fact is true of the overwhelming majority of locations in this State" as a matter of geography and mathematics as well as common sense).

The holding of Jones's Division 3 stands apart from the rest of our law. Jurors are normally entitled to make reasonable inferences from circumstantial evidence regarding all sorts of facts, including the facts necessary to find defendants guilty beyond a reasonable doubt of capital crimes. See, e.g., Williams v. State, 304 Ga. 658, 661 (821 SE2d 351) (2018) ("'Evidence of a defendant's conduct prior to, during, and after the commission of a criminal act . . . authorize(s) the defendant's conviction [for felony murder] if a jury could infer from the conduct that the defendant intentionally encouraged the commission of the criminal act.'" (citation omitted)); Sloans v. State, 304 Ga. 363, 364-365 (818 SE2d 596) (2018) (explaining that this Court's "'limited

11

review [of the sufficiency of evidence] leaves to the jury . . . reasonable inferences to be made from basic facts to ultimate facts'" (citation omitted)); Green v. State, 304 Ga. 385, 390 (818 SE2d 535) (2018) ("[I]t is not inconceivable that [one defendant] killed [the victim] as part of an attempt to rob him; the jury was authorized to infer that the defendants panicked and thought it better to run rather than pause to search [the victim's] pockets.").[3]

Apart from Jones's rejection of inferences based on proximity, we have treated the jurisdictional fact of venue consistent with this general principle, allowing jurors to draw reasonable inferences from circumstantial evidence in deciding whether a crime was committed in the county alleged. See, e.g., Raines v. State, 304 Ga. 582, 584-585 (820 SE2d 679) (2018) (holding that the jury

---

[3] Trial courts regularly instruct jurors in criminal cases that "[c]ircumstantial evidence is the proof of facts or circumstances, by direct evidence, from which you may infer other related or connected facts that are reasonable and justified in light of your experience. . . . The law does not require a higher or greater degree of certainty on the part of the jury to return a verdict based upon circumstantial evidence than upon direct evidence." Georgia Suggested Pattern Jury Instructions, Vol. II: Criminal Cases § 1.30.20, Direct and Circumstantial Evidence. See also Weyer v. State, 333 Ga. App. 706, 712 (776 SE2d 304) (2015) (explaining that "jurors [are] entitled to draw reasonable inferences from the evidence based on their own common-sense understanding of the world"); Willesen v. Ernest Communications, 323 Ga. App. 457, 465-466 n.4 (746 SE2d 755) (2013) ("As a general rule, jurors are authorized to make such reasonable inferences and reasonable deductions as ordinarily prudent persons would make in light of their everyday experience and knowledge of human conduct and behavior."). Ordinary Georgians understand from their everyday experience that it is highly unusual to cross a county line when they merely walk across the street or from a building to the street in front of it.

12

could conclude that venue in Upson County was proved based in part on evidence that the crime was investigated by an agent of the Upson County Narcotics Task Force and that certain evidence of the crime was contained in bags labeled "Upson County"); Faust v. State, 303 Ga. 731, 736 (814 SE2d 714) (2018) (holding that venue in DeKalb County was proved beyond a reasonable doubt based on evidence that the investigation of the crimes was led by DeKalb County police investigators, because the jury was "authorized to infer that [the investigators] acted within the scope of their territorial jurisdiction"); State v. Prescott, 290 Ga. 528, 529 (722 SE2d 738) (2012) (holding that the jury could reasonably infer that a crime committed in Screven County High School took place in Screven County). There is no apparent reason why the jury in this case should be precluded from making the entirely reasonable inference that the place where Appellant murdered Evans — the sidewalk or street just in front of a building located in Fulton County — was also in Fulton County, absent any indication that the locations in question were among the very few in this State that straddle a county line. The holding in Division 3 of Jones was erroneous.

(d) Before we overrule that holding, however, we must consider the question of stare decisis.

Under the doctrine of stare decisis, courts generally stand by their prior decisions, because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process. Stare decisis, however, is not an inexorable command. . . . In reconsidering our prior decisions, we must balance the importance of having the question *decided* against the importance of having it decided *right*. To that end, we have developed a test that considers the age of [the] precedent, the reliance interests at stake, the workability of the decision, and, most importantly, the soundness of its reasoning.

Nalls v. State, 304 Ga. 168, 179 (815 SE2d 38) (2018) (citation and punctuation omitted; emphasis in original).

Beginning with the most important factor, our discussion above has demonstrated that the reasoning in Division 3 of Jones — reasoning supported by no citation of pertinent authority — was flawed as a matter of both law and logic. That holding is "'neither ancient nor entrenched.'" Willis v. State, 304 Ga. 686, 705 (820 SE2d 640) (2018) (citation omitted). Jones was decided less than two decades ago. See City of Cumming v. Flowers, 300 Ga. 820, 832 (797 SE2d 846) (2017) (overruling a 21-year-old precedent and citing cases overruling 45-year-old, 38-year-old, and 18-year-old precedents). The holding in Division 3 drew a strong dissent, and although the holding has been cited with some frequency in venue cases, it appears that this Court has never once

14

relied on it to reverse a conviction; the Court of Appeals (which is required to follow our precedents, however wrongly decided) has done so only four times (including two cases involving distances of a mile or more).[4] Moreover, <u>Jones</u>'s holding "affects no property or contract issues, establishes no substantive rights, and does not involve the sort of reliance interests usually recognized in the stare decisis analysis." <u>Nalls</u>, 304 Ga. at 180. No one commits a crime expecting that if he is caught and tried, the prosecutor will be unable — or simply will forget — to prove with direct evidence that the crime was committed in the county alleged, leaving the court reviewing his conviction to consider whether or not the jury could make reasonable inferences from circumstantial evidence of

---

[4] See <u>In the Interest of M. C.</u>, 345 Ga. App. 863, 867-868 (815 SE2d 194) (2018) (concluding that venue for some of the crimes committed by a juvenile was not sufficiently proved where an officer first observed the juvenile's vehicle in Walton County, but those crimes were committed over the course of a chase that spanned at least six miles); <u>McKinney v. State</u>, 294 Ga. App. 366, 368-369 (670 SE2d 147) (2008) (concluding that evidence that the intersection where the robbery occurred was a mile away from another intersection in Fulton County was insufficient proof of venue); <u>Bell v. State</u>, 291 Ga. App. 169, 169-171 (661 SE2d 207) (2008) (reversing the defendant's conviction for obstruction of a law enforcement officer for failure to prove venue even though the evidence showed that the crime took place after police followed the defendant "a short distance" from a parking lot that was located in Glynn County); <u>King v. State</u>, 271 Ga. App. 384, 387 (609 SE2d 725) (2005) (concluding that evidence that the defendant was arrested in Ben Hill County in an alley that was about 200 yards from the store where he robbed the victim was insufficient to establish venue). We note that because of the longer distances involved in <u>McKinney</u> and especially <u>M. C.</u>, we could not say if the jury could have reasonably inferred proper venue for each of the crimes at issue without examining the entire trial record in the case.

15

distances and the likelihood of intervening county lines.[5]

Finally, as to workability, the holding in Division 3 of <u>Jones</u> has led appellate courts to strain to distinguish that case or to hunt for other reasonable (but often more attenuated) inferences from the evidence to support the jury's venue finding. See, e.g., <u>Propst</u>, 299 Ga. at 561-562 (relying on evidence that Walton County Sheriff's officers responded to and investigated the fatal shooting and that "Walton County" was on property receipts and forms used in the case — rather than on evidence that the shooting occurred "just down the street" from and in the same neighborhood as a location in Walton County — to find sufficient circumstantial evidence of venue); <u>Jones v. State</u>, 299 Ga. 377, 381 (788 SE2d 477) (2016) (holding that venue was sufficiently proved where a witness heard the fatal shots fired "real close" to the time the car containing the victim pulled up "real fast" into a parking lot in Fulton County where the victim's body was dumped). See also id. at 384 (Nahmias, J., concurring)

---

[5] Although we uphold the convictions in this case, we emphasize again that to avoid venue becoming an issue on appeal, prosecutors should not forget to ask what is usually just the question or two needed to establish *directly* the county in which each crime alleged was committed. See, e.g., <u>Raines</u>, 304 Ga. at 584 n.3 ("'We have noted before that, in light of the ease with which venue generally can be proved, it is difficult to understand why the appellate courts are repeatedly faced with this issue. Nevertheless, like the Court of Appeals, we continue to see cases like this one in which venue becomes a serious issue on appeal, apparently unnecessarily.'" (citation omitted)).

16

("[R]ather than continuing to disregard or work around Jones's illogical holding, [this] Court should simply go ahead and formally disapprove it."). The holding in Jones also leaves trial courts and litigants to wonder whether its exception to the principle that juries are allowed to base their findings on reasonable inferences from circumstantial evidence should be confined or allowed to spread to other areas of the law. See State v. Jackson, 287 Ga. 646, 647 (697 SE2d 757) (2010) (overruling a "poorly reasoned" precedent regarding proof of felony murder in part because "it is important that the Court refute its reasoning to ensure that the case can no longer be cited in efforts to pollute other streams of our law"). In sum, stare decisis poses no obstacle to our overruling Division 3 of Jones.

(e)     In our search for any sort of legal support for the holding in Jones, we discovered that this Court has trod this same path before. In an 1876 case, the Court announced a holding similar to Jones's — and equally unsupported by authority — which was followed in a few cases over the next 40 years. The Court was not consistent in following that holding, however, and ultimately rejected it in the 1930s. The Jones Court was apparently oblivious to this history, and thus to the fact that it was actually overruling sub silentio the

17

position on which our Court had settled in the 1930s.[6]

In Gosha v. State, 56 Ga. 36 (1876), the Court held that venue was not sufficiently proved by evidence that the rape occurred within 50 yards of a residence located in Sumter County, because there was no "positive proof in the record of the precise *locus*" of the crime and the residence "might have been within twenty yards of the [county] line." Id. at 36-37. No authority was cited for this holding, and if we are to assess it simply as a matter of judicial wisdom, we must note that in the very same paragraph, the Gosha Court expressed views now understood to be repugnant — that the less-than-10-year-old victim "probably did consent" to sexual intercourse with the defendant, which should "mitigate the crime," and that the defendant and victim were members of "the colored population," who should be treated with mercy "owing to their ignorance." Id. at 37.

Sixteen years later, in Futch v. State, 90 Ga. 472 (16 SE 102) (1892), the

---

[6] Our research into the common law of venue and the law of other jurisdictions has been less extensive, but we have found no support for the holding of Jones. It appears that the general rule which is the rule to which we return Georgia law today is that "[l]ike any other fact, venue may be proved by circumstantial evidence, and it is enough if the fact of venue is properly inferable from all the evidence." Charles Alan Wright et al., Federal Practice & Procedure § 307 (4th ed. Sept. 2018 update).

Court recognized that "[c]ircumstantial evidence . . . may be sufficient to establish the venue," but said that under <u>Gosha</u>, "proof of mere proximity to a place in the county, without more, is not such a circumstance as would warrant the inference that the place of the crime was also in the county." Id. at 477. The Court accordingly held that venue in Tattnall County was not proved by evidence showing that the murder was committed in a buggy shelter about 25 or 30 steps from a house in that county. See id. at 476-477.

Over the next two decades, the Court followed these holdings to reverse convictions in three other cases, citing only <u>Gosha</u> or <u>Futch</u> and offering no further reasoning. See <u>Green v. State</u>, 110 Ga. 270, 270 (34 SE 563) (1899) (holding that venue for arson was not proved by evidence showing that the structure burned was 35 or 40 feet from a house located in the county alleged in the indictment); <u>Jones v. State</u>, 113 Ga. 271, 271-272 (38 SE 851) (1901) (holding that a witness's statement that "'I was about fifty yards from them, on the public road in this county'" was not sufficient to prove venue in that county); <u>Holden v. State</u>, 144 Ga. 338, 338 (87 SE 27) (1915) (holding that a physician's testimony that he found the dead child about 125 or 150 yards from a house in Gilmer County was not sufficient to prove venue in that county). In

19

at least two cases, the Court of Appeals followed these holdings to reverse convictions, albeit unhappily. See Minter v. State, 7 Ga. App. 14, 14-15 (65 SE 1079) (1909) (saying that under Gosha, "we have no option other than to" hold that venue for the defendant's conviction for selling intoxicating liquor was not sufficiently proved by evidence that he sold a man whiskey after the man saw the defendant "sitting on the side of the road in Jasper county"); Wade v. State, 11 Ga. App. 411, 413-415 (75 SE 494) (1912) (saying that the court was "constrained" by this Court's rulings to hold that venue in Grady County was not sufficiently proved by evidence that an assault occurred about half a mile from a home in that county). See also Smith v. State, 2 Ga. App. 413, 414 (58 SE 549) (1907) (noting in dicta that the evidence of venue in Gosha "seem[ed] to be sufficient] . . . [b]ut the Supreme Court thought otherwise").

Beginning just two years after Gosha, however, the Court started another line of cases that allowed juries to make reasonable inferences about nearby locations in determining whether venue was proved beyond a reasonable doubt. In Dumas v. State, 62 Ga. 58 (1878), the murder victim left a bar in Pike County in the late afternoon, received a fatal wound while traveling on a road, and then arrived in the evening at his destination eight miles away in the same county.

20

See id. at 59. Recognizing that "the requisite certainty [for proof of venue] may be attained by circumstantial as well as by direct evidence," and not imposing an exception for evidence of proximity, the Court concluded that the evidence was sufficient to establish venue in Pike County, "there being no testimony tending to show that the road along which [the victim] traveled crossed the county line or that he left the county, entered another, received the wound in the latter, and then returned to the former." Id.

A few years later, in Smiley v. State, 66 Ga. 754 (1881), the evidence presented at trial showed that the larceny victim kept his hogs in Miller County at night but let them out into the open country during the day; the hogs went missing and the defendant, who lived nearby but in a different county, sold the hogs "some distance away." Id. Noting that there was no evidence that the hogs ever went over the county line, the Court held that there was sufficient proof of venue, permitting the jury's inference that the crime occurred in Miller County despite the nearby county line and the possibility that the hogs had crossed the line to the county where the defendant lived. See id. Some Court of Appeals decisions followed these cases. See, e.g., Dyer v. State, 6 Ga. App. 390, 391-392 (65 SE 42) (1909) (holding that evidence that a cow was seen grazing

21

"where it was accustomed to stay in Walker county" on the day before it "was found in the unlawful possession of the defendant" authorized the jury's "infer[ence] that the cow was stolen in Walker county"); Graham v. State, 16 Ga. App. 221, 226-227 (84 SE 981) (1915) (concluding that venue for larceny in Irwin County was sufficiently proved by evidence that the victim's cow was last seen grazing in that county, that the cow was butchered in that county, and that the cow's hide was found a short distance away in that county).

In the 1930s, the Court resolved the conflict between these two lines of cases — in the same way that we decide today's case. In Lee v. State, 176 Ga. 215 (167 SE 507) (1933), the Court held that venue in Long County was properly established for a murder by evidence that the victim was "running around" a house located in that county when he was shot, acknowledging that this conclusion was in apparent conflict with the holding in Futch. Lee, 176 Ga. at 216-218. And in Dickerson v. State, 186 Ga. 557 (199 SE 142) (1938), the Court reviewed the conflicting lines of cases and followed Lee, holding that evidence that the infant murder victim was born in the family home in Ben Hill County, killed by his grandfather four days later, and buried in some woods in that county near the home permitted "[t]he [jury's] natural and reasonable

22

inference . . . that the infant was killed" in that county. Id. at 559-563.

Subsequent decisions expressly recognized that the no-inferences-based-on-proximity holdings of Gosha and Futch were no longer good law. See Martin v. State, 193 Ga. 824, 834-835 (20 SE2d 266) (1942) ("reaffirm[ing]" that in Lee, "the court with all the Justices concurring declined to follow [Futch]" to the extent it conflicted with the ruling there, and concluding that venue in DeKalb County was established for a murder conviction by evidence that the victim got off a streetcar at a street in that county and moments later her dead body was found on a nearby street in the county); Carrigan v. State, 206 Ga. 707, 717-718 (58 SE2d 407) (1950) (noting that the Court in Lee "refused to follow the ruling in . . . Futch" and holding that venue in Fulton County was sufficiently proved by evidence that the garage apartment where the murder occurred was 45 feet from a house located in that county), overruled on other grounds by Dunagan v. State, 269 Ga. 590 (502 SE2d 726) (1998); Johns v. State, 239 Ga. 681, 683 (238 SE2d 372) (1977) ("The court in Dickerson decided . . . not to follow the Gosha, Futch line of cases. See also Lee . . . and Carrigan . . . . We adhere to the decision made in Dickerson."). See also Brown v. State, 87 Ga. App. 548, 549-550 (74 SE2d 554) (1953) (holding that evidence

23

that the fatal stabbing occurred 15 to 20 feet from a location in Washington County was sufficient to prove venue there "in view of the holding in Lee . . . and Martin . . . that the Futch case, if in conflict with the rule above stated, would not be followed").[7]

To sum up, it took this Court more than 50 years to correct Gosha's unsupported and unsupportable holding that a jury can never reasonably infer that a crime committed near a location in one county was committed in the same county. It has taken us fewer than 20 years to correct the same misbegotten holding in Division 3 of Jones. In an effort to ensure that the Court does not venture down the wrong path for a third time, we expressly overrule all cases following those holdings in Gosha and Jones and disapprove all cases that have cited those holdings favorably.[8]

---

[7] We note that Lee, Carrigan, Johns, and Brown also invoked the "slight evidence exception" regarding proof of venue, which we disapproved in Division 2 of Jones because in a criminal trial, the State bears the burden of establishing venue beyond a reasonable doubt and the burden never shifts to the defendant to disprove venue. See 272 Ga. at 902. However, the State often meets its burden of proving the jurisdictional fact of venue    as well as the essential elements of the crime    using circumstantial evidence from which the jury may draw reasonable inferences, with the reasonableness of the inferences measured by the evidence supporting them and the evidence undermining them, whichever party elicited that evidence.

[8] The following cases are overruled: Jones, 272 Ga. at 903-904; Holden, 144 Ga. at 338; Jones, 113 Ga. at 271-272; Green, 110 Ga. at 270; Futch, 90 Ga. at 476-477; Gosha, 56 Ga. at 36-37; Bell, 291 Ga. App. at 169-171; King, 271 Ga. App. at 387; Wade, 11 Ga. App. at 413-415; Minter, 7 Ga. App. at 14-15. Cases disapproved to the extent they endorse the relevant holdings in

24

(f)     Having overruled Division 3 of Jones, we can easily conclude that the evidence in this case was sufficient to support the jury's finding that venue for the murder count (and the associated firearm count) was proved beyond a reasonable doubt to be in Fulton County.  Read in context, the record shows that the police witnesses who testified that "490 Angier Avenue" is in Fulton County were referring not to the precise real estate dimensions of the apartment building with that street address, but rather to the crime scene that included the spot on the sidewalk or street just in front of the building where Appellant shot and killed Evans.  But even if the witnesses were being that precise, the jurors could quite reasonably infer that the sidewalk and street just in front of that property were also located in Fulton County, there being no reason founded on the

Gosha and Jones include Jones v. State, 301 Ga. 1, 5 (799 SE2d 196) (2017); Propst, 299 Ga. at 561; Henry v. State, 278 Ga. 554, 555 (604 SE2d 469) (2004); Allen v. State, 277 Ga. 711, 712 (593 SE2d 662) (2004); Chapman v. State, 275 Ga. 314, 317 (565 SE2d 442) (2002); Robinson v. State, 275 Ga. 143, 144 (561 SE2d 823) (2002); In the Interest of M. C., 345 Ga. App. at 866-869; Payne v. State, 338 Ga. App. 677, 679-681 (791 SE2d 451) (2016); Hogan v. State, 330 Ga. App. 596, 602 n.24 (768 SE2d 779) (2015), disapproved on other grounds by Martin v. McLaughlin, 298 Ga. 44, 46 n.3 (779 SE2d 294) (2015); Trammel v. State, 328 Ga. App. 45, 49 n.1 (761 SE2d 470) (2014); Perkins v. State, 319 Ga. App. 651, 654 (738 SE2d 106) (2013); Bizzard v. State, 312 Ga. App. 185, 187 (718 SE2d 52) (2011); West v. State, 296 Ga. App. 58, 60 (673 SE2d 558) (2009); McKinney, 294 Ga. App. at 368-369; Turner v. State, 293 Ga. App. 869, 870 (668 SE2d 268) (2008); Payne v. State, 290 Ga. App. 589, 591 (660 SE2d 405) (2008), overruled on other grounds by Reed v. State, 291 Ga. 10, 14 (727 SE2d 112) (2012); Gaines v. State, 289 Ga. App. 339, 340 (656 SE2d 871) (2008); Brown, 87 Ga. App. at 549-550; Williamson v. State, 58 Ga. App. 389, 389 (198 SE 552) (1938); Whitfield v. State, 51 Ga. App. 439, 441 (180 SE 630) (1935); Mann v. State, 41 Ga. App. 320, 320 (152 SE 854) (1930); Smith, 2 Ga. App. at 413-414; and Fountain v. City of Fitzgerald, 2 Ga. App. 713, 717 (58 SE 1129) (1907).

evidence to conclude otherwise.

Judgment affirmed. All the Justices concur, except Melton, C. J., and Ellington, J., who concur in judgment only in Division 3 (e).

Decided  January 22, 2019.

Murder. Fulton Superior Court. Before Judge Russell.

Clifford L. Kurlander, for appellant.

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Stephany J. Luttrell, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew D. O'Brien, Assistant Attorney General, for appellee.